# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-3354

_____

United States of America,              *
                                       *
            Plaintiff-Appellee,        *
                                       *   Appeal from the United States
      v.                               *   District Court for the District of
                                       *   Nebraska.
Ervin Contreras, also known as         *
Lil Rob,                               *
                                       *
            Defendant-Appellant.       *

_____

Submitted: March 9, 2004
Filed: June 21, 2004

_____

Before RILEY, MCMILLIAN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Ervin Contreras was charged with conspiring to distribute methamphetamine and cocaine, possessing methamphetamine with intent to deliver, using a Titan Tiger revolver in furtherance of a drug trafficking offense, and using a "Street Sweeper" semi-automatic shotgun in furtherance of a drug trafficking offense. Contreras moved to suppress evidence seized during the search of his home and incriminating

statements he subsequently made to law enforcement officers. The district court[1] denied Contreras's motion, and Contreras proceeded to trial. A jury found Contreras guilty of the first three charges and acquitted him of the fourth. At sentencing, the district court denied Contreras's request for a two-point downward adjustment in his guideline level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Contreras appeals the district court's denial of his motion to suppress and, alternatively, the denial of a downward adjustment for acceptance of responsibility. We affirm.

I.     BACKGROUND

At the suppression hearing, FBI Special Agent Matt Larson testified that when he and other law enforcement officers went to Contreras's residence on April 18, 2002, Contreras gave them permission to enter. Agent Larson testified that he spoke with Contreras in English, that he had no difficulty understanding Contreras, and that Contreras appeared to have no difficulty understanding him. According to Agent Larson, Contreras appeared to be fully aware of his surroundings and did not appear intoxicated. When Agent Larson presented Contreras with a Consent to Search Form written in English only, Contreras, an eighteen-year-old Hispanic, signed it. The officers then searched Contreras's residence and found methamphetamine and a handgun.

The officers arrested Contreras and transported him to the police headquarters. Before doing so, Agent Larson advised Contreras of his Miranda rights using a Rights Advisory Form written in Spanish. Agent Larson stated that Contreras appeared to understand the questions and answered responsively in English.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

At police headquarters, Special Agent James Slosson interviewed Contreras. Agent Slosson testified that he conducted the bulk of the interview in English and that Contreras responded articulately and without hesitation. However, Special Agent Henry Anton, a native Spanish speaker, was present during the interview and clarified questions when Contreras claimed to have difficulty understanding particular English words. During the interview, Contreras told Agent Slosson that he had used methamphetamine the night before the search and had used marijuana the day of the search. Agent Slosson testified that Contreras did not appear intoxicated and seemed to have full control of his faculties during the interview.

Mario Linares testified on behalf of Contreras at the suppression hearing. Linares stated that he and Contreras attended Central High School in Omaha, Nebraska.[2] He claimed that he had been with Contreras the night before Contreras's arrest and that Contreras smoked methamphetamine during that time.

## II.    APPLICABLE LAW AND DISCUSSION

Contreras contends the district court erred in finding that he voluntarily consented to the search of his residence. Whether a defendant voluntarily consented to a search is a factual question, and we review for clear error. United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003); United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998).

In determining whether a defendant's consent was voluntary, courts consider "the characteristics of the person giving consent" and "the encounter from which the consent arose." Id. "Relevant characteristics of the consenting party include age,

_____

[2]United States Magistrate Judge Thomas D. Thalken, who conducted the suppression hearing, took judicial notice of the fact that Central High School is an English speaking school.

intelligence and education; chemical intoxication (if any); whether the individual was informed of the right to withhold consent; and whether the suspect generally understood the rights enjoyed by those under criminal investigation." Id. We do not apply these factors rigidly, but instead employ a totality of circumstances approach. Id. Finally, if law enforcement officers reasonably believed that the defendant consented voluntarily, then the search is lawful under the Fourth Amendment. Id.; Illinois v. Rodriguez, 497 U.S. 177, 185-86 (1990).

Contreras argues that his intoxication prevented him from voluntarily consenting to the search of his home. We disagree. Although the record reveals that Contreras used methamphetamine the evening before and marijuana the day he gave consent, Agents Slosson and Larson both testified that Contreras appeared to be sober and in control of his faculties at the time he consented. We cannot say the district court clearly erred in finding the agents' testimony credible. See United States v. Haggard, 2004 WL 1145086, *4 (8th Cir. 2004) ("The district court's witness credibility decisions can almost never be clear error.").

We are also unpersuaded by Contreras's contention that a language barrier prevented him from consenting voluntarily. Although law enforcement provided a Spanish interpreter for Contreras's post-arrest interrogation, Agent Slosson testified that the bulk of the interrogation was conducted in English. Agent Larson also testified that Contreras effectively communicated with him in English.

The record contains substantial evidence showing that Contreras was lucid at the time he gave consent and that he understood the questions asked of him. He consented in his own home, and nothing in the record suggests that law enforcement officers made threats, promises of leniency or misrepresentations. Contreras argues that as an eighteen-year-old, he was too young to give consent voluntarily. We disagree. Cf. United States v. Astello, 241 F.3d 965, 968 (8th Cir. 2001) (affirming the district's finding that an eighteen-year-old voluntarily made incriminating

statements).  We therefore hold that the district court did not err in finding that Contreras voluntarily consented to the search of his residence.

Contreras raises the same arguments in support of his motion to suppress incriminating statements he made to law enforcement officers after receiving his Miranda warnings.  "We review the district court's findings of fact for clear error and its legal conclusion as to whether a confession was voluntary de novo." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).  In making these determinations, we "inquire into the totality of the circumstances in assessing the conduct of law enforcement officials and the suspect's capacity to resist any pressure." United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995).  See also, United States v. Makes Room, 49 F.3d 410, 414 (8th Cir. 1995) (noting that courts apply the same standard to assess the validity of a Miranda waiver and the voluntariness of a statement under the Fifth Amendment).  For the reasons set forth above, we affirm the district court's finding that Contreras made a voluntary waiver.

We next consider whether the district court erred in denying Contreras's request for a downward adjustment for acceptance of responsibility pursuant to § 3E1.1.  Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," we review with "great deference." U.S.S.G. § 3E1.1, cmt. n.5.  We will reverse only if the district court's findings are clearly erroneous and completely lack foundation. United States v. Greger, 339 F.3d 666, 672 (8th Cir. 2003).

Section 3E1.1(a)  provides for a two-level reduction in a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  The commentary to this guideline further provides:

> This adjustment is not intended to apply to a defendant who puts the
> government to its burden of proof at trial by denying the essential

factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, cmt. n.2.

The jury convicted Contreras of three of the four charges against him. Contreras did not admit factual guilt to any of those charges and, instead, put the government to its burden on all counts. Although Contreras claims that he would have entered into a plea agreement if the government would have dismissed the Street Sweeper shotgun charge against him–the charge of which the jury ultimately found Contreras not guilty–this mere assertion, without more, is an insufficient ground for reversal. See United States v. Velez, 46 F.3d 688, 693-94 (7th Cir. 1995) (affirming the district court's refusal to grant a reduction in the defendant's sentence for acceptance of responsibility, where, prior to trial, defendant expressed a willingness to plead guilty to all counts except the gun possession charge of which he was eventually acquitted). The district court did not clearly err in refusing to award a reduction for acceptance of responsibility.

We affirm the judgment and sentence imposed by the district court.

_____

-6-