# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2798

_____

United States of America,      *
                                       *

      Plaintiff - Appellee,    *

                                       *   Appeal from the United States

v.                            *   District Court for the
                                       *   Eastern District of Arkansas.

Robert Lee Phillips,       *

                                       *   **[PUBLISHED]**

      Defendant - Appellant.  *

_____

Submitted: June 11, 2007
Filed: October 29, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Robert Lee Phillips was arrested after a shooting at the Brown Sugar Club in Altheimer, Arkansas. He made inculpatory statements during two police interviews conducted many hours after the arrest. Phillips was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Following an evidentiary hearing, the district court[1] denied Phillips's motion to suppress the

---

[1]The HONORABLE GEORGE HOWARD, JR., United States District Judge for the Eastern District of Arkansas, now deceased, adopting the Proposed Findings and Recommendations of the HONORABLE JERRY W. CAVANEAU, United States Magistrate Judge for the Eastern District of Arkansas.

statements, rejecting the contention that his waiver of Miranda rights was not knowing and intelligent because he was intoxicated from ecstasy and brandy consumed prior to his arrest. Phillips appeals his conviction and 110-month sentence, challenging the denial of his motion to suppress and the district court's determination of his advisory guidelines sentencing range. We affirm.

## I. The Suppression Issue

Officers dispatched to investigate the shooting were told to watch for a certain car. They stopped that vehicle after a high-speed chase at 12:53 a.m. and arrested the four occupants, including Phillips, who matched a description of the shooter. At 6:45 that morning, Investigator Gary Young awakened Phillips for an interview. Young began the interview by having Phillips read and sign a Miranda waiver form. Phillips then admitted that he went to the Brown Sugar Club with a handgun and fired the gun into the air. He provided a description of the handgun. After Young reduced Phillips's statement to writing, Phillips read and initialed each page. At 2:35 p.m. the following day, more than thirty-six hours after the arrests, Young conducted a second, audio-taped interview after officers learned that Phillips had prior felony convictions and found the handgun he described along a highway near where the shooting occurred. Again, Young advised Phillips of his Miranda rights, and Phillips signed a waiver form. Again, Phillips made incriminating statements.

At the suppression hearing, the officers present during and after the arrests testified that Phillips followed their directions, talked normally, denied knowing about the shooting, and showed no signs of intoxication or drug impairment. Investigator Young testified that Phillips appeared lucid and not intoxicated at each interview. Phillips appeared to understand his rights when he signed the waiver forms and when he initialed the written statement at the end of the first interview. Young noted that, while Phillips made incriminating statements regarding the felon-in-possession charge, he evidenced a "selective memory" whenever Young asked questions about

the shooting. Phillips testified that he took four ecstasy pills and drank a large cup of brandy in the hours before his arrest, that four ecstasy pills was an unusually large dose for him, and that he had no recollection of events after he arrived at the Brown Sugar Club, including the two interviews by Investigator Young many hours later. Indeed, Phillips testified, the large dose of ecstasy caused him to sleep "about four days" without eating or using the restroom. Based on this testimony, Phillips argued to the district court and on appeal that he did not knowingly waive the rights protected by Miranda warnings when he signed waiver forms at the start of the interviews. We review the district court's factual findings for clear error and its ultimate conclusion that Phillips's waiver was knowing and intelligent *de novo*. United States v. Garlewicz, 493 F.3d 933, 935 (8th Cir. 2007). The court's decisions as to witness credibility "can almost never be clear error." United States v. Contreras, 372 F.3d 974, 977 (8th Cir. 2004) (quotation omitted), cert. denied, 546 U.S. 902 (2005).

A criminal suspect may waive the constitutional rights protected by Miranda v. Arizona, 384 U.S. 436 (1966). But the waiver must be voluntary, knowing, and intelligent, that is, it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and the suspect must have a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994), quoting Moran v. Burbine, 475 U.S. 412, 421 (1986). Here, as Phillips does not claim that he was intimidated, coerced, or deceived, the question is whether he sufficiently understood the nature and consequences of his waivers.

To determine whether Phillips was "sober and in control of his faculties" at the time of his inculpatory statements, the district court had to weigh the credibility of Phillips, Investigator Young, and the police officers present during and after Phillips's arrest. See Contreras, 372 F.3d at 977. The court found that Phillips's testimony at the suppression hearing that he was drug impaired and therefore could not remember waiving his Miranda rights at interviews conducted six and thirty-eight hours after his

arrest was simply incredible. The court found that this testimony was implausible because thirty-eight hours "was surely adequate time for any impairment to dissipate," and because the testimony contradicted prior statements in which Phillips was able to recall what happened on the night in question. Instead, the court believed the testimony of the officers who arrested and interviewed Phillips that he was lucid and cooperative and did not appear to be so intoxicated that he was unaware of his rights and the consequences of waiving those rights. These findings are not clearly erroneous. See United States v. Turner, 157 F.3d 552, 555-56 (8th Cir. 1998). The motion to suppress was properly denied.

## II. Sentencing Issues

Adopting the recommendations of the Presentence Investigation Report, the district court determined an advisory guidelines sentencing range of 110 to 120 months in prison and sentenced Phillips to 110 months, the bottom of that range. On appeal, Phillips raises two sentencing issues. First, he argues that the district court committed impermissible double counting when it used his two prior violent felony convictions to increase both his base offense level under U.S.S.G. § 2K2.1(a)(2) and his criminal history points under U.S.S.G. § 4A1.1(a). We disagree. "Double counting is permissible if the Sentencing Commission intended that result and each section concerns conceptually separate notions relating to sentencing." United States v. Rohwedder, 243 F.3d 423, 427 (8th Cir. 2001). The Guidelines in effect when Phillips committed this offense expressly provided that "[p]rior felony conviction(s) resulting in an increased base offense level under [§ 2K2.1(a)(2)] are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History)." U.S.S.G. § 2K2.1, comment. (n.15) (Nov. 2003), now U.S.S.G. § 2K2.1, comment. (n.10). These base offense level and criminal history provisions address conceptually separate sentencing notions. One addresses the gravity of the particular offense. The other addresses the need to deter future criminal activity by

this defendant.  <u>See</u> <u>United States v. Wyckoff</u>, 918 F.2d 925, 927 (11th Cir. 1990).
Thus, the district court did not engage in impermissible double counting.

Second, Phillips argues that the district court violated the Sixth Amendment as construed in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), by imposing a four-level enhancement for use of a firearm in connection with another felony offense without submitting that issue to the jury.  <u>See</u> U.S.S.G. § 2K2.1(b)(5) (Nov. 2003), now U.S.S.G. § 2K2.1(b)(6).  This contention is without merit.  Because the sentencing guidelines are advisory under <u>Booker</u>, enhancements to the advisory guidelines range may be based upon facts found by the sentencing court by a preponderance of the evidence.  <u>See, e.g.</u>, <u>United States v. Pirani</u>, 406 F.3d 543, 551 & n.4 (8th Cir.) (en banc), <u>cert. denied</u>, 546 U.S. 909 (2005).  When the proposed enhancement is based upon an offense for which there was no prior conviction, as in this case, "the government must prove at sentencing (by a preponderance of the evidence) that the defendant committed it." <u>United States v. Raglin</u>, No. 06-3432, slip op. at 3 (8th Cir. Sept. 4, 2007).  Here, Phillips does not challenge the district court's finding that he committed the prior offense in question.  Accordingly, the enhancement was proper.

The judgment of the district court is affirmed.

_____