# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2625

_____

United States of America,            *
                                     *
            Appellee,                *
                                     *     Appeal from the United States
      v.                             *     District Court for the
                                     *     Southern District of Iowa.
Mark Anthony Gaddy, also known as    *
Mark Gaddy,                          *
                                     *
            Appellant.               *


_____

Submitted: March 11, 2008
Filed: July 14, 2008

_____

Before RILEY, GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.


Mark Anthony Gaddy was convicted after a jury trial of one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846, one count of possession with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and four counts of use of a communication facility in a drug felony offense, in violation of 21 U.S.C. §

843(b).  He appeals the district court's[1] decision to admit his confession and three prior convictions into evidence, as well as his sentence.  We affirm.

## I.   BACKGROUND

During the course of a narcotics investigation in February 2005, Iowa law enforcement officers, working with agents of the Drug Enforcement Administration, determined that Gaddy was purchasing cocaine and cocaine base from a drug dealer.  They intercepted telephone calls in which Gaddy discussed drug transactions.  On August 18, 2005, between 5:30 and 6:00 a.m., approximately twelve officers from the Des Moines Metro Special Tactics and Response ("STAR") team entered Gaddy's home to execute search and arrest warrants.  STAR officers used bright lights, swift entry and loud directions to confuse and disorient residents in order to ensure safe entry.  Officers found Gaddy and two other individuals in the home and restrained them with flexible handcuffs.

After Gaddy's home was secured, the STAR team departed around 6:20 a.m. Five officers, including Iowa Division of Narcotics Enforcement Special Agent Scott Peasley and Deputy United States Marshall Mike Powell, conducted the search and questioned the occupants. Deputy Powell testified that all three occupants were awake and calm, although it appeared that Gaddy had been recently awakened.

Agent Peasley administered *Miranda*[2] warnings to Gaddy at 6:22 a.m.  Agent Peasley wrote Gaddy's answers on the *Miranda* waiver form because Gaddy's hands were restrained behind his back.  The waiver reflected that Gaddy understood and

---

[1]The Honorable James E. Gritzner, United Stated District Judge for the Southern District of Iowa.

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

-2-

waived his *Miranda* rights and was willing to make a statement. Agent Peasley then administered warnings to the other occupants, finishing at 6:34 a.m.

At approximately 7:00 a.m., Agent Peasley moved Gaddy to a bedroom and seated him on the floor, while Agent Peasley sat on a weight-lifting bench above him. Agent Peasley asked if Gaddy wanted to make a statement, and Gaddy said he did. Agent Peasley removed the flexible handcuffs and restrained Gaddy's hands in front of him using standard handcuffs. Deputy Powell occasionally entered the room but did not ask questions. During the interview, Gaddy admitted to his involvement in the distribution of cocaine. He stated that he would purchase $50 rocks of crack cocaine two or three times a month and occasionally resell the $50 rocks to support his habit. The interview lasted approximately fifteen minutes, and Agent Peasley testified that Gaddy appeared awake and coherent and did not appear to be under the influence of drugs.

A grand jury returned an eight-count indictment, charging Gaddy with one count of conspiracy to distribute fifty or more grams of cocaine base, cocaine, and marijuana; one count of possession with intent to distribute five or more grams of cocaine base; and six counts of use of a communication facility in a drug felony offense.

Prior to trial, Gaddy moved to suppress his confession, arguing that it was not the product of a voluntary waiver of his *Miranda* rights. Gaddy testified that he had not slept the night before the arrest. He claimed that by 8:30 a.m. the previous day he had taken two Darvocets, a type of pain reliever, and 1600 milligrams of Skelaxin, a muscle relaxer. He worked on a car motor until 2:30 a.m. Over the next hour, Gaddy took two or three shots of gin, two Darvocets and two Skelaxins. He also smoked a Mac blunt, a mix of marijuana and cocaine. He argued that the alcohol, drugs and sleeplessness precluded a finding that he waived his rights voluntarily. Gaddy also argued that the STAR team's entrance disoriented him, that the time between the

entrance and the confession was short, and that Peasley's position on a weight-lifting bench was intimidating, all of which created a coercive atmosphere. The district court denied Gaddy's motion to suppress.

During the jury trial, the Government sought to introduce three of Gaddy's prior convictions. Gaddy was convicted in 1995 for possession with intent to deliver five grams or less of cocaine base, in 1996 for possession with intent to deliver cocaine, and in 2002 for possession with intent to deliver marijuana. The Government argued that the convictions were admissible because Gaddy made a general denial and because the convictions would be relevant to Gaddy's knowledge and intent. Gaddy objected on the basis that the convictions were barred under Federal Rule of Evidence 404(b) because they were too old and their unfair prejudice substantially outweighed their probative value. The district court overruled Gaddy's objection and allowed the convictions into evidence.

The jury returned a guilty verdict against Gaddy on all counts except two of the communication counts. In a special interrogatory, the jury also found that Gaddy was responsible for five grams or more of cocaine base, but not fifty grams or more.

At Gaddy's sentencing on June 29, 2007, the district court found by a preponderance of the evidence that Gaddy engaged in a conspiracy to distribute fifty or more grams of cocaine base and determined that Gaddy had a base offense level of 32 and a criminal history category of VI under the United States Sentencing Guidelines. The district court determined that it had no authority to address the advisory sentencing guidelines' crack/powder cocaine disparity that Gaddy raised. The district court went on to find that Gaddy was a career offender, which meant that regardless of its drug quantity finding, Gaddy had a total offense level of 37 under the sentencing guidelines. His advisory sentencing guidelines range was 360 months' to life imprisonment.

The district court rejected Gaddy's request to depart on account of overstated criminal history. It then examined the factors in 18 U.S.C. § 3553(a) to determine whether to vary. It discussed the nature and circumstances of Gaddy's offense, Gaddy's history and characteristics, the seriousness of his offense, adequate deterrence to criminal conduct, and protection of the public. The district court acknowledged that the sentencing guidelines range was advisory, but it noted:

> There is a presumption in this circuit that that guideline range is reasonable unless the court can articulate specific reasons why it would not be. . . . The United States Supreme Court has now told us [in *Rita v. United States*, 552 U.S. ---, 127 S. Ct. 2456 (Jun. 21, 2007)] that there's nothing wrong with that presumption, and so there's no reason to hesitate to indicate that that is the law of this circuit. Unless I can come up with very specific reasons why the guidelines are not appropriate in your case, then it's assumed that that would be a reasonable thing to do to follow those guidelines.

Sentencing Tr. at 16. The district court went on to find that "the state of the law is not supportive of a variance on those [grounds, including overstated criminal history,] for legal reasons, but also primarily based upon the criminal history. It's difficult to come up with rational reasons why there should be a variance from the guideline sentence under the circumstances of this case . . . ." *Id.* at 17. The district court held that Gaddy's criminal history, the seriousness of the offense, and the need to avoid unwarranted sentencing disparity precluded a variance. It concluded that a sentence within the sentencing guidelines range "adequately addresse[d] the circumstances of this defendant" and sentenced Gaddy to 360 months' imprisonment each on the conspiracy and the possession counts and to 96 months' imprisonment on each of the four communication counts, with all sentences to run concurrently.

Gaddy appeals. First, he argues the district court improperly failed to suppress his confession. Second, he claims that the district court erred in admitting evidence of his prior convictions. Finally, he argues that the district court incorrectly calculated

his advisory sentencing guidelines range and applied an improper presumption of reasonableness to it.

## II.    DISCUSSION

### A.    Gaddy's Confession

Gaddy first argues that the district court should have suppressed his confession. He notes that he had not slept the night before and that he consumed alcohol and drugs several hours before he waived his rights. He contends that the STAR team's dynamic entrance was designed to confuse him and that the resulting confusion meant he could not consent voluntarily. Finally, Gaddy contends that Agent Peasley's position, sitting on a weight-lifting bench above Gaddy, was coercive. These factors, Gaddy argues, support the conclusion that he did not voluntarily waive his *Miranda* rights.

A waiver of the Fifth Amendment privilege against self-incrimination is valid if the waiver is made voluntarily, knowingly and intelligently. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "We accept the district court's factual findings unless they are clearly erroneous. We review the ultimate determination that the accused knowingly and voluntarily waived these rights de novo." *United States v. Makes Room*, 49 F.3d 410, 414 (8th Cir. 1995). "A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006) (internal quotation omitted), *cert. denied*, 549 U.S. ---, 127 S. Ct. 1504 (2007). In order to determine whether a confession was voluntary, we look to the "totality of the circumstances and must determine whether the individual's will was overborne." *United States v. Castro-Higuero*, 473 F.3d 880, 886 (8th Cir. 2007) (internal quotation omitted).

-6-

Sleeplessness, alcohol use and drug use are relevant to our analysis, but "[i]ntoxication and fatigue do not automatically render a confession involuntary." *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990). Instead, "the test is whether these mental impairments caused the defendant's will to be overborne." *Id.* For instance, we have upheld the conclusion that a suspect who recently used methamphetamine and had not slept for five days voluntarily waived his *Miranda* rights where police officers testified that they had no knowledge of these alleged impairments and the suspect did not act intoxicated. *Id.* Similarly, we have upheld a district court's conclusion that a suspect who used methamphetamine the evening before and marijuana the day he waived his rights consented voluntarily because police officers testified he appeared "sober and in control of his facilities." *United States v. Contreras*, 372 F.3d 974, 977 (8th Cir. 2004). Deputy Powell and Agent Peasley each testified that Gaddy appeared awake and coherent, and Gaddy did not tell them that he was tired, intoxicated or under the influence of drugs. Agent Peasley testified that he advised Gaddy of his *Miranda* rights, that Gaddy acknowledged that he understood them, and that he wanted to make a statement. The district court accepted Deputy Powell's and Agent Peasley's testimony as credible. *See United States v. Annis*, 446 F.3d 852, 856 n.2 (8th Cir. 2006) ("Credibility assessments are for the fact-finder.").

The evidence also supports a finding that Gaddy was not confused or disoriented after the STAR team's dynamic entry and that an adequate period of time, at least twenty minutes, elapsed between its entry and Gaddy's waiver. Deputy Powell testified that Gaddy looked "calm, fairly quiet" and was "very compliant" after the STAR team left. Agent Peasley testified that Gaddy understood his *Miranda* rights, agreed to waive them and appeared "cooperative" and "calm." About forty minutes later, Agent Peasley again asked Gaddy if he wanted to speak with him, and Gaddy said that he did. These are not traits of someone who was confused or disoriented by the STAR team's dynamic entrance. In addition, Gaddy had extensive contact with law enforcement on prior occasions. *See United States v. Gallardo-*

-7-

*Marquez*, 253 F.3d 1121, 1123 (8th Cir. 2001) (finding that armed entrance at 6:30 a.m. did not render statements involuntary when, among other reasons, defendant had extensive prior contact with law enforcement). Agent's Peasley's position, sitting on a weight-lifting bench above Gaddy, also was not sufficiently coercive to make Gaddy's consent involuntary. *See Harper*, 466 F.3d at 644 (finding that two officers standing closely over the defendant as he lay on the ground handcuffed shortly before he made a statement was not coercive).

Based on the totality of the circumstances, the district court did not err in refusing to suppress Gaddy's confession because its findings that his will was not overborne is not clearly erroneous and the waiver of his *Miranda* rights was voluntary. Therefore, we affirm its decision not to suppress Gaddy's confession.

### B.    Gaddy's Prior Convictions

The Government introduced three of Gaddy's prior convictions for possession of a controlled substance with intent to deliver: cocaine base in 1995, cocaine in 1996, and marijuana in 2002. We review the district court's decision to admit Gaddy's prior convictions for abuse of discretion. *See United States v. Cook*, 454 F.3d 938, 940 (8th Cir. 2006). "[We] will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Foster*, 344 F.3d 799, 801 (8th Cir. 2003) (internal quotation omitted).

> Evidence of prior bad acts is not admissible under [Federal] Rule [of Evidence] 404(b) solely to prove the defendant's criminal disposition, but is admissible to show proof of . . . intent . . . [or] knowledge . . . . Bad acts evidence is admissible if (1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value.

*United States v. Jackson*, 278 F.3d 769, 771 (8th Cir. 2002) (internal quotations omitted).

First, Gaddy contends that the convictions were too remote in time to the crime charged. At the time of his trial, Gaddy's prior convictions were four, ten and eleven years old, which are not so remote as to be inadmissible. *See Ironi*, 525 F.3d at 688 (finding that prior drug convictions that were eight and ten years old were not too remote); *Cook*, 454 F.3d at 942 (concluding that drug convictions that were eight and nine years old were not too remote); *United States v. Green*, 151 F.3d 1111, 1114 (8th Cir. 1998) (listing cases in which convictions that were twelve, thirteen and seventeen years old were admissible). Gaddy's prior convictions are not overly remote under Rule 404(b).

Second, Gaddy argues that the unfair prejudice of admitting these convictions substantially outweighed their probative value. Gaddy does not dispute the Government's characterization of his defense as a general denial. A general denial defense places the defendant's state of mind at issue. *Jackson*, 278 F.3d at 771. In light of a general denial, prior drug sale convictions are probative to show that Gaddy had the intent and knowledge necessary for a jury to convict him. *See Foster*, 344 F.3d at 801 (finding that a general denial defense "plac[es] intent or state of mind into question and allow[s] the admission of prior criminal convictions to prove both knowledge and intent"); *Jackson*, 278 F.3d at 771 (concluding that a general denial defense permits evidence of prior convictions to show knowledge and intent). In addition, any unfair prejudicial effect of these prior convictions was reduced by the district court's limiting instruction, which instructed the jury that it could only consider this evidence to decide the issues of intent and knowledge. *See Ironi*, 525 F.3d at 688. Therefore, the potential prejudice did not outweigh the probative value of these prior convictions, and the district court did not abuse its discretion by admitting Gaddy's prior convictions.

### C.    Sentencing

Gaddy argues that the district court erroneously calculated his advisory sentencing guidelines range by making its own drug quantity determination. "A district court's application of the advisory guidelines is reviewed de novo, while findings of fact are reviewed for clear error." *United States v. Whiting*, 522 F.3d 845, 849 (8th Cir. 2008). The jury found that the conspiracy involved five grams or more of cocaine base, but not fifty grams or more. The district court concluded that a preponderance of the evidence supported the conclusion that at least fifty grams of cocaine base were involved in the offense. *See United States v. Rodriguez*, 484 F.3d 1006, 1014 (8th Cir.) (holding that a sentencing court may establish a drug quantity by a preponderance of the evidence), *cert. denied*, 552 U.S. ---, 128 S. Ct. 316 (2007). Nevertheless, we need not determine whether sufficient evidence supports the district court's finding because the drug quantity finding was superseded by Gaddy's status as a career offender. *See United States v. Shepard*, 462 F.3d 847, 872 (8th Cir.) (finding that challenge to drug quantity finding was moot because career offender status trumped the drug quantity finding), *cert. denied*, 549 U.S. ---, 128 S. Ct. 838 (2006).

Gaddy also argues that the district court should have considered the effect of Amendment 706 to the sentencing guidelines, which reduced the crack/powder cocaine sentencing ratio in § 2D1.1(c). Because Gaddy was a career offender, "the crack/powder ratio was not ultimately used in calculating" his sentence, and "the arguments concerning the ratio are not relevant to his case." *See United States v. Moore*, 481 F.3d 1113, 1115 (8th Cir.), *cert. denied*, 552 U.S. ---, 128 S. Ct. 122 (2007). Gaddy also claims that the district court erred because it did not depart on the basis of overstated criminal history. Where, as here, the district court is aware of its discretion to depart, its decision not to depart is unreviewable. *See United States v. Watson*, 480 F.3d 1175, 1177 (8th Cir. 2007), *cert. denied*, 552 U.S. ---, 128 S. Ct. 305 (2007).

Finally, Gaddy argues that the district court violated *Rita* by presuming that the advisory sentencing guidelines range was reasonable. Gaddy did not object to the district court's alleged presumption, so we review for plain error. *See United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). Gaddy, sentenced after the *Rita* decision, bears the burden of proving that there was "(1) error, (2) that [was] plain, and (3) that affect[ed] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

Even if we assume that the district court erroneously presumed the guidelines range to be reasonable and that such error was plain, we conclude that the error did not affect Gaddy's substantial rights. The record does not show that he has demonstrated a "reasonable probability that he would have received a more favorable sentence" without the presumption. *See Pirani*, 406 F.3d at 551. The district court extensively discussed the § 3553(a) factors before sentencing Gaddy. It addressed the nature and circumstances of the offense and the history and characteristics of Gaddy, the seriousness of the offense, the question of just punishment, adequate deterrence to criminal conduct, protection of the public from further crimes, and avoidance of unwarranted sentencing disparity. It decided that it would not vary "primarily based upon the criminal history. It's difficult to come up with rational reasons why there should be a variance from the guideline sentence under the circumstances of this case because of the criminal history and because of the seriousness of this particular offense." Sentencing Tr. at 17. The district court acknowledged that the sentencing guidelines range was "pretty stern," but "this general statement does not satisfy [Gaddy's] burden to prove that the district court would have imposed a shorter sentence had it not made the erroneous presumption." *See United States v. Heavner*, 258 Fed. Appx. 57, 59 (8th Cir. 2007) (unpublished per curiam). The district court concluded that "the sentencing guideline range is a reasonable range." Especially in light of the district court's thorough analysis of the § 3553(a) factors and its

-11-

conclusion that the advisory sentencing guidelines range was appropriate in this case, Gaddy "cannot carry his burden of showing that he would have received a lesser sentence in the absence of the district court's erroneous presumption." *See United States v. Ibarra*, 263 Fed. Appx. 536, 538 (8th Cir. 2007) (unpublished per curiam); *see also United States v. Alvizo-Trujillo*, 521 F.3d 1015, 1018 (8th Cir. 2008) ("In this case, the district court imposed the sentence not as a result of its improper presumption, but as a result of the district court's assessment of the relevant factors and determination of the minimally adequate sentence, as required by § 3553(a).") (internal quotation omitted). Therefore, we affirm Gaddy's sentence.

## III. CONCLUSION

We affirm Gaddy's conviction and sentence.

_____