# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-4485

_____

United States of America

*Plaintiff - Appellee*

v.

Manuel Espinoza

*Defendant - Appellant*

_____

No. 16-4486

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Luis Tizoc, also known as John Doe

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Council Bluffs

_____

Submitted: October 19, 2017
Filed: March 13, 2018
_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

After a six-day trial, a jury convicted Manuel Espinoza and Jose Luis Tizoc of conspiracy to distribute methamphetamine, see 21 U.S.C. §§ 841, 846, and Espinoza of being a prohibited person in possession of a firearm, see 18 U.S.C. §§ 922(g)(2)-(3), 924(a)(2). The district court[1] sentenced Espinoza to 240 months in prison and Tizoc to 300 months. Each timely appealed, challenging his conviction and sentence. We consolidated the appeals and now affirm.

## I. Sufficiency of the Evidence (Espinoza)

Espinoza argues the district court erred in denying his motion for judgment of acquittal because the trial evidence was insufficient to convict him of conspiracy to distribute methamphetamine and being a prohibited person in possession of a firearm. Rule 29(a) of the Federal Rules of Criminal Procedure provides that the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." This standard applies whether a timely motion is made before or after the jury verdict. See Rule 29(c). In reviewing the denial of a Rule 29 motion, "[w]e apply the same standard of review to the district court's ruling . . . as we do to a sufficiency of the evidence challenge." United States v. Cook, 603 F.3d 434, 437 (8th Cir. 2010). The verdict must be upheld "if there is any interpretation of the

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

-2-

evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." United States v. Taylor, 813 F.3d 1139, 1146 (8th Cir.) (quotation omitted), cert. denied, 136 S. Ct. 2424 (2016).

A. The Conspiracy Charge. At trial, FBI Special Agent and case agent Michele Neily testified that, in 2014 and 2015, state and federal task forces investigating methamphetamine distribution in Omaha, Nebraska and Council Bluffs, Iowa identified Richard Hull, Jr. as a key distributor. Using wiretaps, physical surveillance, source information, and controlled purchases, investigators identified Espinoza and Tizoc as two of Hull's suppliers. On September 23, 2015, warrant searches at Tizoc's and Hull's residence and at a garage on Z Street in Omaha yielded distribution quantities of methamphetamine, firearms, ammunition, financial records, and other evidence of drug trafficking such as a digital scale, packaging materials, and razor blades.

Richard Hull pleaded guilty to drug conspiracy and firearm charges and testified for the government at trial. In 2014, Hull began buying methamphetamine from Espinoza and his girlfriend, Claudia; they delivered two-pound quantities to Hull's residence. After Claudia moved to Mexico in 2015, Hull purchased from Espinoza directly, acquiring a pound of methamphetamine that summer. Special Agent Neily testified that three wiretapped conversations between Hull and Espinoza concerned Hull's methamphetamine requirements and his ability to pay.

Jessica Moreno, Hull's live-in girlfriend, also pleaded guilty to a drug conspiracy charge and corroborated Hull's testimony. Moreno testified that, in a wiretapped call with a person she identified as Espinoza, she asked him to supply Hull a half-pound of methamphetamine. In another conversation, Espinoza instructed Moreno to have Hull meet him at a convenience store and pay what he owed Espinoza for methamphetamine. Moreno accompanied Hull to this meeting, and physical surveillance yielded a photo of Espinoza entering his car. Brandi Lopez,

-3-

who pleaded guilty to drug conspiracy and firearm charges, testified that Espinoza supplied her a pound of methamphetamine every two to three days and once requested that she collect money Hull owed Espinoza for methamphetamine. Lopez sold to over 250 customers from the end of 2014 until her arrest in August 2015.

To prove a conspiracy to distribute methamphetamine, the government must prove an agreement to distribute methamphetamine that the defendant knew of and intentionally joined. See Taylor, 813 F.3d at 1146-47. "Evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." United States v. Morris, 791 F.3d 910, 913 (8th Cir. 2015) (quotation omitted). Espinoza argues Hull, Moreno, and Lopez's testimony was "tainted" by their desire to reduce their sentences and thus insufficient to support a conviction. But "[w]e have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Harris-Thompson, 751 F.3d 590, 600 (8th Cir.) (quotation omitted), cert. denied, 135 S. Ct. 415 (2014). Espinoza argues the government's lack of direct evidence, such as controlled purchases from him or a wiretap on his phone, makes the evidence of his participation insufficient. But the government may prove a conspiracy to distribute a controlled substance through circumstantial evidence. See, e.g., United States v. Jackson, 204 F.3d 812, 814 (8th Cir. 2000). Here, a jury could reasonably infer from the cooperating conspirators' testimony, the wiretapped phone calls, and the physical surveillance that Espinoza was guilty of conspiring to distribute methamphetamine.

B. The Firearm Charge. On August 24, 2015, while on traffic patrol, Council Bluffs Police Officer Ty Boldra stopped a black Mercedes traveling without a front license plate. A search of the driver, Manuel Espinoza, uncovered a pipe and 0.8 grams of methamphetamine in Espinoza's pockets, and Officer Boldra arrested Espinoza for possession of drug paraphernalia. An inventory search of Espinoza's

car then discovered a firearm between the driver's seat and center console. Count 10 of the indictment charged Espinoza with violating 18 U.S.C. §§ 922(g)(2) and (3), which provide: "It shall be unlawful for any person . . . who is a fugitive from justice [or] . . . who is an unlawful user of or addicted to any controlled substance . . . to . . . possess in or affecting commerce, any firearm or ammunition."

The jury found Espinoza guilty of that charge. Espinoza argues the district court erred in denying his motion for judgment of acquittal because the government's evidence was insufficient to show he was a fugitive from justice *or* an unlawful drug user when he possessed the firearm. If the evidence was sufficient to establish one of these alternative elements, we need not consider the other. "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Griffin v. United States, 502 U.S. 46, 56-57 (1991), quoting Turner v. United States, 396 U.S. 398, 420 (1970).

We conclude the evidence was sufficient to establish that Espinoza was an unlawful drug user in possession of a firearm when Officer Boldra found a firearm, glass pipe, and approximately 0.8 grams of methamphetamine in Espinoza's possession during the August 24, 2015 traffic stop. The government need not prove "contemporaneous use of a controlled substance and possession of a firearm." United States v. Johnson, 572 F.3d 449, 453 (8th Cir.) (quotation omitted), cert. denied, 558 U.S. 1018 (2009). That Espinoza was found in possession of a firearm and a user quantity of methamphetamine permitted a rational jury to infer he was an unlawful methamphetamine user at that time. See United States v. Mack, 343 F.3d 929, 934-35 (8th Cir. 2003), cert. denied, 540 U.S. 1226 (2004). Moreover, Brandi Lopez testified that she used methamphetamine with Espinoza in August 2015; Hull and Moreno testified they would occasionally smoke methamphetamine with Espinoza.

Alternatively, Espinoza argues the district court abused its discretion in denying his motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. He asserts that "[a] miscarriage of justice has occurred with the jury's verdict," presumably because the verdict was against the weight of the evidence. "Motions for new trials based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution." United States v. Vore, 743 F.3d 1175, 1181 (8th Cir. 2014) (quotation omitted). As our brief summary of the trial evidence reflects, the verdict was not against the weight of this evidence. Therefore, the district court did not abuse its discretion in denying Espinoza a new trial.

## II. The Suppression Issue (Espinoza)

Espinoza moved to suppress evidence seized during the August 24, 2015 traffic stop, arguing (i) Officer Boldra lacked probable cause for the initial stop; (ii) asking Espinoza to exit the vehicle and conducting a pat-down search unconstitutionally extended the traffic stop; and (iii) Espinoza did not voluntarily consent to the pat-down search. After an evidentiary hearing at which Officer Boldra testified, but Espinoza did not, the district court denied the motion, finding (i) there was probable cause to make a traffic stop when Boldra followed Espinoza's car because it lacked a front license plate and then observed its right rear brake light was not operating, as Iowa Code § 321.387 requires; (ii) it was reasonable to ask Espinoza to sit in the police cruiser when he did not have a valid driver's license; and (iii) Espinoza voluntarily consented to a search that revealed a pipe and, after his arrest for possession of drug paraphernalia, 0.8 grams of methamphetamine. "In considering the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*." United States v. Evans, 830 F.3d 761, 765 (8th Cir. 2016) (quotation omitted), cert. denied, 137 S. Ct. 839 (2017).

-6-

(i)  On appeal, Espinoza first argues that Officer Boldra lacked probable cause to stop his vehicle.  This contention is without merit.  An officer "who observes a traffic violation has probable cause to stop the vehicle and its driver."  United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007).  Boldra observed that Espinoza's rear brake light was not functioning, a violation of Iowa law.  Boldra had probable cause to stop Espinoza's vehicle.

(ii)  Espinoza argues that Officer Boldra unconstitutionally extended the traffic stop when he requested that Espinoza accompany him to his cruiser, which was an unreasonable tactic designed to delve into subjects not related to the purpose of the stop.  "Once the officer makes the traffic stop, the officer may lawfully check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car."  United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003).  Here, when Espinoza revealed that he lacked a valid driver's license, the request that he move to Boldra's cruiser was directly related to proper completion of the traffic stop because, without a license, Espinoza could not be permitted to drive his vehicle after the stop.  Officer Boldra testified that he typically arrests the driver and impounds the vehicle when a stop reveals driver's license and equipment violations.

(iii)  Finally, Espinoza argues Officer Boldra's pat-down search was unlawful because Espinoza did not voluntarily consent to the search.  "A search conducted pursuant to a valid consent is constitutionally permissible."  United States v. Martin, 982 F.2d 1236, 1238-39 (8th Cir. 1993).  The test for a valid consent to search "is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances."  Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quotation omitted).  The issue turns not on the defendant's subjective state of mind, but on whether the officer reasonably believed the defendant consented.  See United States v. Contreras, 372 F.3d 974, 977 (8th Cir. 2004), cert. denied, 546 U.S. 902 (2005).  Thus, the government "only needed to prove that it was reasonable [for Officer

Boldra] to believe that [Espinoza's] consent was not the result of 'duress or coercion, express or implied.'" United States v. Cedano-Medina, 366 F.3d 682, 688 (8th Cir.) (citation omitted), cert. denied, 543 U.S. 1035 (2004).

Officer Boldra testified that, after instructing Espinoza to pull over, he explained that Espinoza had committed traffic violations and requested his registration, insurance, and driver's license. When Espinoza had no valid driver's license, Boldra asked him to accompany Boldra to the police cruiser, intending to write traffic tickets. Espinoza agreed. Before Espinoza entered the cruiser, Boldra asked if Espinoza had any firearms or knives. Espinoza said no. Boldra then "asked him if he would mind if I patted him down." In response, Espinoza lifted his arms parallel to the ground. Boldra asked if Espinoza would put his hand on the vehicle. In response, Espinoza "turns around and puts his hands on the trunk of his car." Their conversation was in English, though Espinoza's English was "broken" and Boldra used hand gestures in communicating his requests.

During the pat-down search, Boldra felt a bulge in Espinoza's pocket that Boldra believed to be a glass pipe used for smoking drugs. Espinoza identified the object as a pipe, removed it from his own pocket, and placed it on his vehicle's trunk. Boldra arrested Espinoza for possessing drug paraphernalia, read him Miranda rights in English, resumed the search, and discovered 0.8 grams of methamphetamine in another pocket. Boldra requested police backup, conducted an inventory search of Espinoza's car, and discovered the firearm.

Officer Boldra testified that he routinely asks for consent to conduct a pat-down search before a person enters his police car to protect officer safety, a not unreasonable practice. In addition to saying "no," it is easy for a person to respond with negative behavior to a request for consent to a pat-down search, for example, by folding one's arms to prevent the search. By contrast, Espinoza's response -- raising his arms parallel to the ground -- gave Officer Boldra a reasonable basis to believe

Espinoza was consenting to the search, consistent with his cooperative response and demeanor during the traffic stop and reinforced by his willingness to place his hand on his vehicle's trunk, making access easier, and then retrieving the pipe from his pocket when Boldra asked what it was.

Espinoza argues that, even if he consented to the search, his limited ability to speak and understand English rendered his consent involuntary. The district court found there was not "any significant language barrier prevent[ing Espinoza] from voluntarily consenting to the pat-down search." Espinoza initiated a conversation in English before the stop, answered questions in English, and responded promptly to Boldra's commands and requests in English throughout their encounter. Based on the totality of the circumstances, we conclude the district court did not clearly err in finding that Espinoza voluntarily consented to the pat-down search. Compare Contreras, 372 F.3d at 977-78; Cedano-Medina, 366 F.3d at 687; United States v. Mendoza-Cepeda, 250 F.3d 626, 627, 629 (8th Cir. 2001).

### III. Ineffective Assistance of Counsel (Tizoc)

Tizoc argues his trial counsel's failure to object to inadmissible and unfairly prejudicial evidence and closing argument linking Tizoc to the notorious drug cartel in his home state in Mexico, Sinaloa, and cross examination that "permitt[ed] the jury to hear [rumors] that Tizoc's mother had started to run the same methamphetamine distribution operations after her son's arrest," constituted ineffective assistance of counsel in violation of the Sixth Amendment. See Strickland v. Washington, 466 U.S. 668 (1984). Because ineffective assistance claims are usually best litigated in collateral proceedings, we consider a claim on direct appeal only "where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." United States v. Thompson, 690 F.3d 977, 992 (8th Cir. 2012) (quotation omitted), cert. denied, 568 U.S. 1240 (2013). "The ineffective assistance standard is highly deferential to an attorney's

-9-

judgment, particularly on issues such as whether to object to the introduction of evidence at trial." United States v. Calhoun, 721 F.3d 596, 604 (8th Cir. 2013). Here, we have no showing of why Tizoc's trial counsel did not make the objections in question. Accordingly, we will follow our normal practice and not consider this claim on direct appeal See id.

## IV. Sentencing Issues

A. Espinoza. Espinoza argues the district court committed clear error by imposing a three-level enhancement for his "manager or supervisor" role in the conspiracy offense. See U.S.S.G. § 3B1.1(b). The contention is without merit. Espinoza's Presentence Investigation Report (PSR) recommended the enhancement, resulting in a total recommended offense level of 43. At sentencing, the district court agreed with Espinoza's objection, declined to impose a role enhancement, and adjusted the total offense level to 40.

B. Tizoc. Tizoc's advisory sentencing guidelines range was life imprisonment based on a maximum total offense level of 43[2] and his Category I criminal history. The district court varied downward and sentenced him to 300 months in prison. On appeal, Tizoc argues the court erred in applying two sentencing enhancements, findings we review for clear error. See United States v. Rivera-Mendoza, 682 F.3d 730, 733 (8th Cir. 2012); Morris, 791 F.3d at 914. He also argues the court committed two procedural errors and imposed a substantively unreasonable sentence.

---

[2]In fact, the PSR calculated an offense level of forty-eight, which the district court effectively adopted in rejecting all of Tizoc's sentencing-enhancement objections. But, under U.S.S.G. Ch. 5, Pt. A, comment. (n.2), "[a]n offense level of more than 43 is to be treated as an offense level of 43."

-10-

1. The Importation Enhancement.  The guidelines impose a two-level enhancement "[i]f . . . the offense involved the importation of . . . methamphetamine" and the defendant is not subject to a mitigating role adjustment.  U.S.S.G. § 2D1.1(b)(5).  Tizoc argues the evidence was insufficient to establish by a preponderance of the evidence that the conspiracy involved imported methamphetamine.  Like the district court, we disagree.

At trial, Diane Cervantes, Tizoc's self-described "second mother," testified that Tizoc explained he laundered cash from his drug distribution operations by buying cars using drug proceeds, repairing them in Omaha, and exchanging them for drugs in Mexico.  She testified that Tizoc would sometimes transport drug money to Mexico and receive shipments of Mexican-originated drugs.  Tizoc argues other evidence conflicts with Cervantes's testimony -- Joel Rodriguez Gomez, who worked at the Z Street garage, testified that an SUV delivered methamphetamine shipments to the garage and, on one occasion, he saw Tizoc provide the driver a suitcase containing cash.  If he were paying with repaired cars in Mexico, as Cervantes testified, Tizoc argues, he would not have had to pay for the shipments.  The testimony was not clearly inconsistent, and if it were, "the district court's credibility findings are virtually unassailable on appeal."  United States v. Willis, 433 F.3d 634, 636 (8th Cir.), cert. denied, 549 U.S. 860 (2006).  In addition, Special Agent Neily testified that most methamphetamine in the United States originates from Mexico, and there was evidence that Tizoc and his subordinates rotated taking trips there.  As in Rivera-Mendoza, 682 F.3d at 733-34, the evidence supported the district court's finding by a preponderance of the evidence that the conspiracy involved the knowing importation of methamphetamine, whether or not the enhancement requires proof that the defendant knew of the importation.

2. The Role Enhancement.  The sentencing guidelines impose a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).

-11-

Indicia of a leadership role include "the exercise of decision making authority, the nature of participation in the commission of the offense . . . the degree of participation in planning or organizing the offense . . . and the degree of control and authority exercised over others." § 3B1.1, comment. (n.4). A defendant "need organize or lead only one participant to trigger the enhancement." United States v. Maxwell, 778 F.3d 719, 736 (8th Cir.) (quotation omitted), cert. denied, 135 S. Ct. 2827 (2015). Tizoc argues the district court clearly erred because the evidence was insufficient to establish his organizational or leadership role.

We conclude that ample evidence supports the leadership enhancement. Hull testified Tizoc's runners would have to obtain his permission before selling methamphetamine to Hull on credit, demonstrating both decision-making authority and control over subordinate conspirators. See Morris, 791 F.3d at 914. Hull and Ramon Espinoza, who bought methamphetamine for resale from Tizoc, testified he would personally confront them when they fell behind on their drug debt, evidencing management of the conspiracy's financial operations. A text-message exchange in which a Tizoc customer asked an associate to find out what Tizoc would charge for a particular quantity of methamphetamine purchases was evidence of his price-setting authority. See Willis, 433 F.3d at 636.

3. Procedural Error. Tizoc asserts the district court committed two procedural sentencing errors. These claims were not raised at sentencing so we review for plain error. See United States v. Kirlin, 859 F.3d 539, 543 (8th Cir.), cert. denied, 138 S. Ct. 405 (2017).

First, Tizoc argues the district court erred in failing to address mitigating sentencing factors under 18 U.S.C. § 3553(a) -- he has a wife and newborn child; a reduced sentence would adequately deter a first-time offender; and he was young when he became involved in the conspiracy. After stating it reviewed the PSR and both sides' sentencing memoranda, the district court explicitly weighed Tizoc's

youth, lack of criminal history, and the need to avoid unwarranted sentencing disparities in fashioning the sentence. The court explained that it "appreciate[d] and underst[ood]" Tizoc's sentencing recommendation, but concluded that the seriousness of Tizoc's offense warranted a greater sentence. The court's discussion of the § 3553(a) factors was more than adequate. There was no procedural error. See Rita v. United States, 551 U.S. 338, 359 (2007).

Second, Tizoc argues the district court based its sentence on clearly erroneous facts -- that Tizoc's involvement was "big" and the criminal enterprise was "extraordinarily dangerous for a lot of people." Procedural error can include "selecting a sentence based on clearly erroneous facts." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotation omitted). Tizoc has not shown the district court clearly erred, let alone plainly erred, in describing his involvement as "big" and the enterprise as "extraordinarily dangerous." Though Tizoc characterizes the operation as mid-size, the PSR attributed 32.98 kg of methamphetamine to Tizoc, and the court found that he exercised an organizational or leadership role in the conspiracy. The district court's description of the enterprise as "extraordinarily dangerous" was supported by evidence the operation relied on threats of physical violence, the multiple firearms found at the Z Street garage, and Ramon Espinoza's testimony that Tizoc made threatening statements causing Espinoza to fear for his life when he fell behind in paying his drug debt. The district court did not commit plain procedural error by basing its sentence on clearly erroneous facts.

4. Substantive Unreasonableness. Tizoc argues the 300-month sentence is substantively unreasonable, an issue we review for abuse of discretion, "bearing in mind that, when a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." Maxwell, 778 F.3d at 734 (quotation omitted).

Tizoc argues the sentence is substantively unreasonable because it creates a significant disparity with co-defendants his PSR deemed most culpable -- Salvador Nunez-Trejo, Hull, and Espinoza. But Nunez-Trejo and Hull both pleaded guilty, and Hull cooperated with the government, prompting a substantial-assistance motion under U.S.S.G. § 5K1.1. See United States v. Gallegos, 480 F.3d 856, 859 (8th Cir. 2007). Espinoza, the only co-defendant who went to trial, had a lower guidelines range because he did not receive a role enhancement. See United States v. Frausto, 636 F.3d 992, 997-98 (8th Cir. 2011). There is no unwarranted sentencing disparity between defendants whose "conduct and record" are different from Tizoc's. Maxwell, 778 F.3d at 736. The district court did not abuse its discretion in granting a considerable downward variance but still imposing a substantial sentence based on Tizoc's significant involvement in a serious drug conspiracy offense.

The judgments of the district court are affirmed.

_____