# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-2026

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Anthony J. Heppner, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

No. 07-2028

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Thomas Anderson, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 14, 2008
Filed: March 13, 2008

_____

Before LOKEN, Chief Judge, MURPHY, Circuit Judge, and JARVEY,[1] District Judge.

_____

MURPHY, Circuit Judge.

Thomas Anderson and Anthony Heppner, founders of the Skyward Group investment club, were convicted by a jury of mail fraud offenses based on misrepresentations they made to investors and their diversion of invested funds to their own use. They appeal from the judgment. We affirm.

Heppner and Anderson started the Skyward Group (Skyward) investment club in 1999 and served on its board of directors. Both men solicited individuals to become members of Skyward club by representing that funds loaned to the club would be invested to generate returns for the members. Heppner and Anderson were both involved in administering the club. They provided members with loan agreements and membership application forms, and they also received completed loan agreements and payments that had been mailed to Skyward. Heppner frequently signed the loan agreements. Both men were authorized signers on at least one Skyward bank account.

Members paid an $80 annual membership fee to cover the club's expenses, and their investments were structured as loans to Skyward. Members expected that their loans would be used for investment purposes and believed they would make substantial or extraordinary profits when their money was returned. Some members received written earning projections on the loaned funds, but the returns were not guaranteed. Although many members did not know the details of the investment scheme, some thought it had something to do with overseas currency trading. Under Skyward's mentor program, members who persuaded other people to join Skyward

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

were told that they would receive a portion of the profits earned by each person they brought into the club. Skyward used the United States mail to administer the club, to receive members' funds, and to communicate with members about their accounts.

Appellants portray Skyward as a faith based club and suggest that members of the club shared a spiritual belief which affected their decision to invest with Skyward. It is not clear, however, what the nature of those beliefs might have been, how many members might have shared them, or what role they might have played in Skyward's operations. The only representation touching on religion which appellants point to in the record was Skyward's July 1999 update to members which stated, "Praise the Lord. We have been blessed" before misleadingly reporting that preliminary requirements had been completed and that trading had begun.

Skyward received over $1.6 million from more than 1,000 investors between February 1999 and March 2001. Benefit reports were sent to members indicating that their money was in a Skyward account. Skyward did attempt to invest some of the money in deals handled by Tim Oliver, an attorney who was a friend of Heppner's and who had employed Heppner in his mortgage business. Although these investments failed and led to losses of around $536,000, Skyward did not disclose the losses to its members or other information about difficulties with its investments. Rather, Skyward issued optimistic updates suggesting investments were progressing and benefit reports showing that members had made a profit on their loans. Some members testified at trial that they decided to loan more money to Skyward based on these misleading updates and reports.

Both Heppner and Anderson drew money from Skyward for their own use. Their withdrawals began as early as May 1999. By the government's accounting, over $450,000 went to Heppner's personal benefit, either directly or through his personal trust; Anderson received over $150,000. Some of the cashier checks members sent to Skyward to invest were deposited directly into Anderson's personal account or were

cashed by him. Member funds were also funneled to another member of Skyward's board of directors. There was evidence that only about $69,000 was returned to investors.

In 2005 Heppner and Anderson were indicted on twenty counts of mail fraud; three of these were dismissed on the government's motion. After various pretrial motions were denied, the case proceeded to a jury trial. To prove its case the government presented evidence that included testimony from Skyward members and Oliver, as well as financial records and documents. A portion of Heppner's September 2000 testimony before the Commodity Futures Trading Commission (CFTC) was admitted over appellants' objections. Appellants also complained that the government had failed to disclose certain evidence to which they were entitled, and that the trial judge[2] declined to give their requested jury instruction on materiality. At the close of the government's case, Anderson and Heppner moved for a judgment of acquittal which was denied.

After a ten day trial each appellant was convicted of 17 counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341. The district court sentenced Anderson to 51 months on each count and Heppner to 46 months on each count, to be served concurrently, followed by three years of supervised release. The court also ordered appellants to pay restitution of $1,137,990 to victims of their fraud.

After trial appellants moved for a judgment of acquittal or a new trial, claiming that there had been insufficient evidence and that the government had failed to disclose information to defense counsel in violation of Brady v. Maryland, 373 U.S. 83 (1963). They also argued that they were entitled to a new trial based on juror

---

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

misconduct. The district court denied these motions, concluding that the claims had no merit. These appeals followed.

Heppner and Anderson[3] appeal their convictions and request a new trial based on alleged trial errors. They object to the district court's instructions on materiality, suggesting that they were deprived of the opportunity to explore and present their First Amendment defense. They also assert that the government improperly ignored the religious motivations of Skyward members and committed Brady violations. Both argue that the district court erred in admitting Heppner's testimony before the CFTC, and Anderson contends that the admission of this testimony violated his rights under the confrontation clause. The government responds that all of these claims are unfounded. It argues that it provided abundant proof on the materiality element of their offenses and denies that it committed any Brady violations. It contends that Heppner's CFTC testimony was admissible and did not prejudice Anderson since he was not mentioned in it and the district court instructed the jury to consider it only in respect to the case against Heppner.

Appellants first claim that the government did not establish the materiality element of mail fraud charges against them and suggest that the government infringed on their religious freedom by presenting the materiality issue in a purely secular light. They argue that because the decisions of Skyward members to invest were based on their spiritual beliefs, there was no proof that statements by appellants to the members were material to their investment decisions. Citing the First Amendment case United States v. Ballard, 322 U.S. 78 (1944), they contend that the district court erred by refusing to give their requested jury instruction on materiality and that they are therefore entitled to a new trial. The government responds that the convictions were

---

[3]Two weeks before oral argument Anderson filed a letter stating his intention to supplement the record with a pro se brief. None has been received, and his request to file an untimely brief is denied.

supported by overwhelming evidence, that <u>Ballard</u> is inapposite, and that the record does not support a new trial.

We review the rejection of a defendant's proposed instruction for abuse of discretion. <u>United States v. Meads</u>, 479 F.3d 598, 601 (8th Cir. 2007). In order to be convicted of mail fraud, a defendant must have made a material falsehood; materiality is an essential element of the offense. <u>See</u> <u>Preston v. United States</u>, 312 F.3d 959, 960 (8th Cir. 2002) (per curiam), <u>citing</u> <u>Neder v. United States</u>, 527 U.S. 1, 25 (1999). In general a falsehood is material "'if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" <u>Id.</u> at 961 n.3, <u>quoting</u> <u>Neder</u>, 527 U.S. at 16 (alteration in original). Heppner and Anderson wanted the court to instruct the jury that if the materiality decision as to any count turned on the genuineness of the religious beliefs of an investor or either defendant, the defendants should be found not guilty on that count. The district court declined to give their proposed instruction and instead instructed the jury that a "material fact is a fact which would be of importance to a reasonable person making a decision about a particular matter or transaction."

Appellants say their requested instruction was based on the Supreme Court's decision in <u>Ballard</u>. There, the leaders of the "I Am" religious movement had been indicted for using the mail in a fraudulent scheme to solicit funds based on religious representations and doctrines which they allegedly knew were false. <u>Ballard</u>, 322 U.S. at 79-80. The Court concluded that the First Amendment prevented "the truth or verity of respondents' religious doctrines or beliefs [from being] submitted to the jury" and that the district court had properly withheld those issues from the jury. <u>Id.</u> at 86, 88. In contrast to the facts in <u>Ballard</u>, Heppner and Anderson solicited funds for an investment group rather than for a religious movement and their trial did not "put [them] to the proof of their religious doctrines or beliefs" as prohibited by the First Amendment. <u>Id.</u> at 86. Appellants allege that Skyward members believed they would receive irrationally high returns on their investments and that those beliefs were based

-6-

on a sense of trust or faith, citing the trial testimony of certain members. But Skyward members, including some of those specifically mentioned by appellants, testified that their expectations of substantial profits and investment decisions were rationally based on representations made by Skyward and appellants. Some members expressly denied that they based their investments on their faith. Others testified to their trust in Skyward and the people running the group without invoking any religious beliefs. Heppner and Anderson do not point to any evidence that the truth of their religious beliefs, or those of Skyward members, was an issue at trial. We conclude that the district court did not abuse its discretion in denying appellants' proposed jury instruction.

The instruction given by the district court on materiality is substantially similar to the one approved in Preston to be consistent with Supreme Court precedent: a material fact is "a fact that would be important to a reasonable person in deciding whether to engage or not to engage in a particular transaction." 312 F.3d at 961. We conclude that there was no error in the materiality instruction the district court gave and no abuse of discretion in its denial of appellants' proposed instruction. See Meads, 479 F.3d at 601 (district court does not err by denying an instruction which is not supported by the evidence at trial). The government presented sufficient evidence to prove the charges, including the element of materiality, and a jury could reasonably convict Heppner and Anderson based on this evidence. See United States v. Bistrup, 449 F.3d 873, 881 (8th Cir. 2006).

Heppner and Anderson next contend that the government violated its duties under Brady, alleging that the government did not disclose or tardily disclosed information about Oliver. This material included an FBI investigation into a financial transaction of Oliver's which was apparently unrelated to Skyward and information about his financial transactions which appeared in a newspaper article shortly after trial. Appellants also argue that the government failed to collect available evidence about the spiritual beliefs of appellants and Skyward members. The government

-7-

denies that it committed any <u>Brady</u> violation, pointing out that defense counsel had some of the challenged information, that there is no evidence that other information was in the government's possession, and that appellants have not shown that any of the challenged information was exculpatory or material to guilt.

The government has an affirmative duty to disclose evidence that is favorable to the accused and material to either guilt or punishment; this rule extends to impeachment evidence. <u>United States v. Barraza Cazares</u>, 465 F.3d 327, 333 (8th Cir. 2006), <u>citing</u> <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985). To establish a <u>Brady</u> violation, a defendant must show that the government suppressed evidence that was favorable to the defendant and material either to guilt or to punishment. <u>Id.</u>; <u>United States v. Almendares</u>, 397 F.3d 653, 664 (8th Cir. 2005). Evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Almendares</u>, 397 F.3d at 664, <u>quoting</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-34 (1995).

None of appellants' <u>Brady</u> claims have merit. The government disclosed the FBI investigation report the day before trial so appellants had the information in time to use it at trial. <u>See</u> <u>id.</u> at 665. Appellants have not shown that the government possessed the newspaper information about Oliver or was even aware of it prior to or during trial. <u>See</u> <u>United States v. Lacey</u>, 219 F.3d 779, 783 (8th Cir. 2000); <u>United States v. Dierling</u>, 131 F.3d 722, 736 (8th Cir. 1997). Although appellants also complain that their ability to cross examine Oliver was impeded by his refusal to speak with them before trial, his failure to maintain records, and his lack of recollection at trial, "[n]o constitutional violation occurs when a witness chooses of her own volition not to be interviewed by the defense," <u>United States v. Cheatham</u>, 899 F.2d 747, 753 (8th Cir. 1990) (citation omitted), and nonexistent records cannot be disclosed.

Appellants also allege that the government breached its Brady obligations by ignoring and failing to collect information about the religious beliefs of investors, but Brady does not require the government to discover information not in its possession or of which it was not aware. See United States v. Turner, 104 F.3d 217, 220 (8th Cir. 1997); see also, United States v. Jones, 34 F.3d 596, 599 (8th Cir. 1994). Appellants make vague assertions of other potential violations, but these nonspecific contentions do not even identify the material allegedly withheld, much less make the required showing. See Almendares, 397 F.3d at 664. We conclude that Heppner and Anderson have not established any Brady violations, and we see no abuse of discretion in the district court's denial of their motion for a new trial based on those claims. See id. (stating standard of review).

Appellants also object to the district court's admission into evidence of portions of Heppner's CFTC testimony, arguing that the testimony should have been excluded on grounds of relevancy, undue prejudice, and hearsay. The government counters that the district court did not err in admitting the redacted testimony, and that it was relevant because Heppner described his role and involvement in Skyward. We review a trial court's admission of evidence for an abuse of discretion. United States v. Davis, 449 F.3d 842, 847 (8th Cir. 2006) (citations omitted). Evidence is relevant so long as it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, however. Fed. R. Evid. 403. Unfairly prejudicial evidence is that which has an "'undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Emeron Taken Alive, 262 F.3d 711, 714 (8th Cir. 2001), quoting Fed. R. Evid. 403, Adv. Comm. Notes (alteration in original).

Appellants have not made clear the precise nature of their objections to Heppner's testimony, but none of their arguments on relevance or undue prejudice show any abuse of the trial court's discretion. Appellants argue that Heppner's testimony before the CFTC mostly concerned an investment other than Skyward, but the portion introduced at trial was redacted to focus on Heppner's description of his role in and knowledge of Skyward. Heppner suggests that he testified without counsel on Oliver's advice and that he had not realized that Oliver would also be testifying. At trial Oliver denied giving Heppner such advice, and Heppner was informed by the CFTC that he had the right to counsel and to refuse to answer incriminating questions under the Fifth Amendment. Appellants assert that the placement of Heppner's testimony after Oliver's trial testimony made it hard to cross examine Oliver effectively. Oliver remained under subpoena, however, and defense counsel could have recalled him for examination had they so desired.

Appellants' hearsay objection also misses the mark. See Fed. R. Evid. 801(c). Rule 801(d)(2) expressly provides that an admission by a party opponent is not hearsay when the statement is "offered against a party and is . . . the party's own statement, in either an individual or a representative capacity." See also, United States v. McPike, 512 F.3d 1052, 1055 (8th Cir. 2008). Heppner's CFTC testimony was therefore not hearsay when admitted against him, and the jury was instructed not to consider that testimony in the case against Anderson. Under these circumstances we conclude that the district court did not abuse its discretion in admitting the testimony.

Anderson separately asserts that admission of Heppner's CFTC testimony violated his Sixth Amendment right to confront witnesses against him, citing Bruton v. United States, 391 U.S. 123 (1968). The government disagrees, arguing that the testimony was appropriately redacted to remove all references to Anderson and that the district court cautioned the jury that it could only consider the testimony against Heppner. We review confrontation clause objections to the admission of evidence de novo. Davis, 449 F.3d at 847. The government may introduce a statement by one

defendant in a joint trial against the defendant who made it without infringing on a codefendant's confrontation clause rights "if the statement is sanitized to eliminate all direct references to the co-defendant and if the jury is instructed to consider the statement only against the declarant." United States v. Chapman, 345 F.3d 630, 634 (8th Cir. 2003) (citations omitted); see also, Richardson v. Marsh, 481 U.S. 200, 211 (1987). The district court instructed the jury that it could only consider the testimony in the case against Heppner, and the transcript was redacted to remove Anderson's name and any language that could be construed as a reference to him. The admission of this testimony did not violate Anderson's confrontation clause rights. See Chapman, 345 F.3d at 634.

We conclude that none of the alleged errors provides grounds for reversal or new trial. We thus affirm the judgments of the district court.

_____