# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-3535/3536

_____

United States of America,           *
                                    *
            Appellee,               *
                                    *
    v.                              *    Appeal from the United States
                                    *    District Court for the
Joshua Lee Howe,                    *    Eastern District of Arkansas.
                                    *
            Appellant.              *
                                    *
                                    *

_____

Submitted: June 9, 2008
Filed: August 13, 2008

_____

Before SMITH, BOWMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Joshua Lee Howe was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Howe to 120 months' imprisonment for this conviction and a consecutive

_____

[1]The Honorable Richard T. Dawson, United States District Judge for the Eastern District of Arkansas.

60 months on Howe's guilty plea to a related escape charge, for a total sentence of 180 months' imprisonment. Howe appeals. For the following reasons, we affirm.

## I.    BACKGROUND

In December 2002, Jeremy Gaither was kidnapped, robbed and murdered. Howe, Richard Smith and Robert Phillips were arrested in connection with this crime. Smith pled guilty and agreed to cooperate with the Government. Smith detailed Howe's plan to kidnap and rob Gaither and the resulting murder. Smith also described Phillips's role in the kidnapping, robbery and murder. A six-count indictment charged Howe and Phillips with: (1) conspiring with each other to commit the crimes of kidnapping and robbery, resulting in felony murder; (2) committing murder in the perpetration of a robbery and kidnapping; (3) aiding and abetting one another to commit the crime of kidnapping; (4) being a felon in possession of a firearm (as to Phillips); (5) being a felon in possession of a firearm (as to Howe); and (6) aiding and abetting one another to commit the crime of using and carrying a firearm in relation to a crime of violence.

At a jury trial, the Government presented evidence, primarily through Smith, that Howe, a drug dealer, developed a plan to kidnap and rob Gaither because Gaither was a rival drug dealer. Howe had Smith and Phillips execute the plan because he knew Gaither would not agree to meet with him. In order to intimidate Gaither during the robbery, Howe had Smith retrieve a pistol from his car. Howe had received the pistol from Sherria Doyle three months earlier in a trade for drugs. Prior to the trade, Doyle had taken the pistol from her boyfriend, Michael Padgett. When Smith expressed hesitation in using the pistol, Howe gave the pistol to Phillips. Smith and Phillips then followed Howe's directions. Smith lured Gaither into a borrowed car by saying that the owner of the car wanted to sell it to Gaither. Once Gaither got into the car, Smith drove to where Phillips was waiting. Phillips claimed that he needed a ride because his car broke down. Smith then drove Gaither and Phillips to the White River

National Wildlife Range. In the car, Phillips ordered Gaither to turn over his money and to strip naked while pointing the pistol at him. Phillips ordered Gaither to get out of the car. Once outside, Gaither attacked Phillips. As they fought, Phillips shot Gaither. Phillips jumped in the car, and Smith and Phillips left Gaither at the wildlife range. Gaither died from the gunshot wound at that location. When Smith and Phillips returned to Howe, Howe directed Smith to place the pistol in the woods and later instructed Smith to retrieve the pistol from the woods. When Smith retrieved the pistol from the woods, he was with Chelsa Dixon, his girlfriend, and he told Dixon to wipe the pistol with her sweater. He then gave the pistol to Howe.

The jury found Howe guilty of being a felon in possession of a firearm (Count 5). However, it acquitted Howe of the murder charge (Count 2) and the charge of aiding and abetting Phillips to commit the crime of using and carrying a firearm in relation to a crime of violence (Count 6). The jury deadlocked on the conspiracy to commit a kidnapping which resulted in felony murder charge (Count 1) and the aiding and abetting the crime of kidnapping charge (Count 3). The district court declared a mistrial on Counts 1 and 3. The jury acquitted Phillips on all counts.

Howe filed a motion for judgment of acquittal regarding the guilty verdict on the felon in possession of a firearm count. Howe also filed a motion for dismissal of the kidnapping charge (Count 3), claiming that a retrial would result in a double jeopardy violation. The Government filed a motion to dismiss the indictment without prejudice because it intended to seek another indictment against Howe for the two offenses on which the district court declared a mistrial. In one order, the district court denied Howe's motion for judgment of acquittal, denied his motion for dismissal of the kidnapping charge (Count 3), and granted the Government's motion to dismiss the indictment without prejudice. Based on this order, the United States District Clerk dismissed all five counts of the indictment against Howe. The Government then filed a motion to clarify the dismissal, requesting that the dismissal only pertain to the counts on which the district court declared a mistrial, Counts 1 and 3. The district

court granted the Government's motion and entered an order clarifying that the dismissal without prejudice only applied to Counts 1 and 3 and reinstating the jury's guilty verdict on Count 5 and the judgment of acquittal on Counts 2 and 6.

At sentencing, the district court grouped Howe's felon in possession of a firearm count and escape count for the purposes of calculating an advisory sentencing guidelines range under the United States Sentencing Guidelines.[2] In calculating his offense level, the district court applied the § 2K2.1(c)(1)(B) cross reference to § 2A1.1(a) because Howe possessed the firearm in connection with the conspiracy to kidnap and rob Gaither and because of the resulting felony murder. With this cross reference and the adjustments for his role in the offense and obstruction of justice, Howe's total offense level was 47 and his criminal history category was VI, which resulted in an advisory sentencing guidelines range of life imprisonment. The district court sentenced Howe to 180 months' imprisonment, representing the total of the statutory maximum sentences for both convictions. Howe appeals his felon in possession of a firearm conviction and his sentence.

## II. DISCUSSION

### A. Evidentiary Rulings

We review a district court's decision regarding the admissibility of evidence for an abuse of discretion. *United States v. Dorsey*, 523 F.3d 878, 879 (8th Cir. 2008). We "will not reverse unless substantial rights were affected." *United States v. Nguyen*, 526 F.3d 1129, 1135 (8th Cir. 2008). "Evidence is relevant so long as it has 'any tendency to make the existence of any fact that is of consequence to the

---

[2]The escape count resulted from Howe's August 2007 guilty plea of escaping from a Dallas County Detention Facility, where he was held awaiting trial. *See* 18 U.S.C. § 751(a). Pursuant to Howe's motion, the district court consolidated the two cases for sentencing.

determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Heppner*, 519 F.3d 744, 751 (8th Cir.), *petition for cert. filed*, --- U.S.L.W. --- (U.S. July 12, 2008) (No. 08-5334) (quoting Fed. R. Evid. 401). "A court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, however." *Id.* (citing Fed. R. Evid. 403).

### 1.    Exhibit 63

Howe argues that the district court erred by admitting Exhibit 63 into evidence. Exhibit 63 was a picture of a .22 caliber Hi-Standard Supermatic, Tournament Model pistol, a pistol that the Government argued was similar to the pistol used to murder Gaither. Howe argues that Exhibit 63's prejudicial effect outweighed any probative value because the pistol portrayed in the exhibit was not the pistol used to murder Gaither. *See* Fed. R. Evid. 401, 403. He contends that the ballistic report that Gaither was shot with a .22 caliber long-rifle bullet suggests that numerous other firearms could have been used.

We permit "the use of replica evidence, more specifically guns, for demonstrative purposes." *United States v. Parks*, 364 F.3d 902, 907 (8th Cir. 2004), *vacated on other grounds*, 543 U.S. 1101 (2005); *see United States v. McIntosh*, 23 F.3d 1454, 1456-57 (8th Cir. 1994). While Exhibit 63 was a picture of a pistol and not an actual pistol, the potential for unfair prejudice is even less when using a picture as demonstrative evidence than it would be for an actual pistol.

The Government correctly used Exhibit 63 as demonstrative evidence and did not suggest that it pictured the actual firearm used to murder Gaither. Instead, the Government questioned its witnesses about the similarities and differences between the pistol in Exhibit 63 and the pistol used to murder Gaither. When questioning Smith, the Government asked, "How do you recognize Government's Exhibit 63?"

Smith responded, "It's the same caliber weapon that was used in the murder." The Government later asked, "And are you sure that you got that gun – a similar type gun from [Howe]?" Smith answered, "Yes, sir, from underneath the seat of a car." Doyle testified that the pistol in the exhibit resembled the pistol that belonged to Padgett, her boyfriend, which she traded to Howe. Padgett testified that the pistol in Exhibit 63 looked like the pistol that he had owned. He also testified that the only material differences between his pistol and the pistol in Exhibit 63 was that his pistol had the word "Tournament" on it and his pistol's handle was slightly darker than that in Exhibit 63.

"In balancing the prejudicial effect and probative value, great deference is given to the district judge's determination." *Parks*, 364 F.3d at 907. Given this deference and the Government's proper use of Exhibit 63 as demonstrative evidence, we find that the exhibit had probative value in identifying the type of pistol possessed by Howe and was not unfairly prejudicial because the jury could only have understood that it was being used as demonstrative evidence. Therefore, the district did not abuse its discretion in admitting Exhibit 63.

### 2. Prior Bad Act Evidence

Howe also argues that the district court should not have admitted Howe's prior bad act involving the robbing of drug thieves and requiring them to strip naked in a similar manner as Gaither was robbed. He contends that this evidence was not so distinctive as to show a signature and was not similar to the December 6, 2002 incident.

"Evidence of prior bad acts is 'not admissible to prove the character of a person in order to show action in conformity therewith,' but is admissible to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Kent*, 531 F.3d 642, 650 (8th Cir. 2008) (quoting Fed. R.

Evid. 404(b)). "Evidence of prior bad acts is admissible if it is (1) relevant to a material issue, (2) similar in kind and reasonably close in time, (3) sufficient to support a jury finding by a preponderance of the evidence, and (4) more probative than prejudicial." *Id.* Additionally, "[w]here the pattern and characteristics of the crimes are so unusual and distinctive as to be like a signature, evidence of a defendant's prior crimes is admissible to prove that it was indeed the defendant that committed the charged crime." *United States v. Lewis*, 483 F.3d 871, 875 (8th Cir. 2007) (quotation and alteration omitted). "Giving great deference to the district court's determination in balancing the prejudicial effect and probative value of evidence of other crimes or acts, we will reverse the district court's evidentiary decision only when the evidence admitted clearly has no bearing on any issue involved." *United States v. Jourdain*, 433 F.3d 652, 659 (8th Cir. 2006) (quotation omitted).

Howe's cousin testified that he and Howe once robbed several people who had stolen their drugs. While Howe held a gun during this robbery, Howe's cousin beat them up and made them strip naked. One person was forced to ride away on a bike naked. Even though Howe's cousin, not Howe, forced the people to take off their clothes, Howe participated in the robbery by flourishing a gun. Howe argues that this prior bad act was not so distinctive as to be like a signature because this method of stripping and robbing people of their hidden drugs is common among drug dealers. He also argues that this evidence is not similar to Gaither's robbery and is unfairly prejudicial because it was admitted only "to tarnish the character of Howe."

We believe that the prior robbery was unusual and distinctive enough as to be like a signature, and Howe provides no support for his assertion that this method of stripping and robbing a person is common among drug dealers. Like the prior robbery, Gaither was held at gunpoint, forced to strip naked, robbed, and left there. With these distinctive similarities, the prior bad act was relevant to "motive, knowledge, intent, plan, purpose, [and] modus operandi," as the district court

instructed the jury when the evidence was presented. Trial Tr. at 559. Any unfair, prejudicial effect that might have resulted was reduced by this instruction. *See United States v. Ironi*, 525 F.3d 683, 688 (8th Cir. 2008).

We also disagree with Howe's argument that the prior bad act is not close in time because it was only established that it occurred some time in the year before the December 6, 2002 incident. Even without the exact date of the incident, an act occurring a year or less before the charged conduct is not so remote in time that it cannot be admitted under Rule 404(b). *See id.* at 687-88. Therefore, the district court did not abuse its discretion in admitting the prior bad act evidence.[3]

## B.    Government's Closing Argument

Howe argues that the Government's statement during closing argument that Doyle gave Howe a firearm three months before the December 6, 2002 murder created either a variance or constructive amendment because the indictment charged Howe with being a felon in possession of a firearm on December 6, 2002. "A variance arises when the evidence presented proves facts that are materially different from those alleged in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007), *cert. denied*, --- U.S. ---, 128 S. Ct. 1286 (2008) (quotation and alteration omitted). "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner–often through the

---

[3]In his brief, Howe alludes to, without sufficient argument or explanation, the following evidentiary issues: Exhibit 63's use in "bolster[ing] the improper reference that Howe was of bad character," Exhibit 63's use in prompting Doyle's testimony about giving Howe a pistol for drugs three months before Gaither's murder, Doyle's actual testimony that she gave the pistol to Howe for drugs three months before Gaither's murder, and any evidence of Howe's pre-trial escape. "Undeveloped issues perfunctorily averred to in an appellate brief are waived." *United States v. Lester*, --- F.3d ---, 2008 WL 2682580, at *1 (8th Cir. July 10, 2008) (quotation and alterations omitted).

evidence presented at trial or the jury instruction–that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." *Id.* "The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." *United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000).

Because Howe only argues that the Government's statement changed the dates of the offense, and not the offense charged, he actually is arguing that the statement created a variance, not a constructive amendment. We review de novo whether a variance existed and whether it prejudiced the defendant. *Id.* at 979. "In determining whether a variance exists, we consider the totality of the circumstances, including the nature of the activities, the location and time frame in which the activities were performed, and the participants involved." *United States v. Abfalter*, 340 F.3d 646, 650 (8th Cir. 2003) (quotation omitted) (conducting a variance review of a statement by the Government in closing argument). "Reversal is warranted only if the variance prejudiced the defendant's substantial rights." *United States v. Buckley*, 525 F.3d 629, 633 (8th Cir. 2008).

After reviewing the Government's closing argument in its entirety, we find that its statements regarding Howe's possession of the firearm three months before the date charged in the indictment did not constitute a variance. In its closing argument, the Government first described the pistol that Howe told Smith to retrieve from the car on December 6, 2002. The Government then described Doyle's testimony that she traded the pistol to Howe for drugs three months earlier. The Government used this testimony to show how and when the pistol came to be in Howe's possession. Later in its closing argument, the Government made the statement that Howe argues constituted a variance or constructive possession: "You've heard the testimony of Sherria Doyle . . . that three months prior to this she gave Josh Howe a pistol in exchange for an eightball of crack. Right there, at that moment, Josh Howe is a felon

in possession of a firearm. Right there he is guilty of possessing a firearm." Trial Tr. at 1218. However, the Government continued to explain its theory by stating that "[Howe] kept it, and he later provided it to Mr. Phillips to shoot and kill Jeremy Gaither. When Mr. Howe gives the gun to Mr. Phillips, Mr. Phillips is a felon in possession of a firearm. That's it. That's the crime." *Id.* Looking at the entirety of the closing argument, we find that the Government was summarizing its theory, consistently maintained throughout the trial, that Howe first received the pistol three months before the murder and then gave the pistol to Phillips to murder Gaither on or about December 6, 2002. *See Abfalter*, 340 F.3d at 651 (concluding that there was no variance because the Government's statement in closing argument was consistent with its theory throughout the trial). Therefore, no variance was created by the Government's closing argument. Additionally, even if the statement did constitute a variance, it would not be prejudicial to Howe because the evidence that Howe possessed the gun on December 6, 2002, the date he directed Smith to retrieve it from his vehicle and he gave it to Phillips, "provided a sufficient basis for the jury's finding." *See id.*[4]

## C.    Sufficiency of Evidence

Howe argues that the district court erred by denying his motion for judgment of acquittal because the Government did not provide sufficient evidence that the firearm traveled in or affected interstate commerce. "We review *de novo* a denial of a motion for a judgment of acquittal." *United States v. Tyndall*, 521 F.3d 877, 881 (8th Cir. 2008). "Viewing the evidence most favorably to the government, resolving

---

[4]We also disagree with Howe's contention that the absence of the date of the offense in the jury instructions contributed to the existence of a variance or a constructive amendment. The date was not a material element of the felon in possession of a firearm charge, *see Stuckey*, 220 F.3d 976 at 982, and the jury was provided a copy of the indictment, which included the date of December 6, 2002, as the date of the felon in possession offense.

evidentiary conflicts in the government's favor, and accepting all reasonable inferences from the evidence supporting the jury's verdict, this court affirms if the evidence at trial is sufficient to sustain a conviction." *United States v. Sturdivant*, 513 F.3d 795, 800 (8th Cir. 2008). To obtain a conviction for being a felon in possession of a firearm, "the government had to prove beyond a reasonable doubt (1) a previous conviction for a crime punishable by imprisonment over one year and (2) knowing possession of a firearm (3) that was in or affected interstate commerce." *United States v. Collier*, 527 F.3d 695, 701 (8th Cir. 2008). Because Howe only challenges the sufficiency of the evidence with respect to the third element, we limit our review to whether the evidence was sufficient for a reasonable jury to conclude that the firearm was in or affected interstate commerce. To prove that the firearm was in or affected interstate commerce, "[t]he government need not produce the firearm in question[. P]roof that the firearm was manufactured outside the state of possession will suffice." *United States v. Cox*, 942 F.2d 1282, 1286 (8th Cir. 1991).

The Government presented sufficient evidence that the .22 caliber pistol that Howe possessed on December 6, 2002, traveled in interstate commerce. Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Glen Jordan identified Exhibit 63 as a picture of a .22 caliber Hi-Standard Supermatic, Tournament Model pistol. The Government used this exhibit as demonstrative evidence when it questioned several witnesses to establish that the pistol Howe possessed was, in fact, a Hi-Standard .22 caliber pistol. Doyle testified that she took a .22 caliber pistol from Padgett, her boyfriend, and gave it to Howe for drugs three months before Gaither's murder. Padgett testified that his Hi-Standard .22 caliber pistol was missing. He also testified that his pistol only fired .22 caliber long bullets. Both Doyle and Padgett testified that the pistol was similar in appearance to the pistol portrayed in Exhibit 63. Smith also testified that the pistol he retrieved for the robbery at Howe's direction from Howe's vehicle was similar to the pistol portrayed in Exhibit 63. Additionally, a ballistics expert testified that the bullet in Gaither's body was consistent with a .22 caliber long bullet. Giving all reasonable inferences to the Government's evidence,

this evidence sufficiently established that the pistol that Howe possessed and gave to Phillips on December 6, 2002, was a Hi-Standard .22 caliber pistol.

The Government then presented evidence that a Hi-Standard .22 caliber pistol would have traveled in interstate commerce if it was located in Arkansas. Special Agent Jordan testified about the firearm portrayed in Exhibit 63:

> Q: If that particular firearm was possessed in Arkansas, would it have impacted interstate commerce?
>
> A: Yes.
>
> Q: And that means it wasn't manufactured here?
>
> A: That's correct.

Trial Tr. at 599. We conclude that a reasonable jury could infer from Special Agent Jordan's testimony that any Hi-Standard .22 caliber pistol possessed in Arkansas would had to have traveled in interstate commerce. This testimony, along with the testimony of Howe's possession of a similar .22 caliber pistol, permitted a jury reasonably to infer that the firearm that Howe possessed and gave to Phillips on December 6, 2002, had traveled in interstate commerce. Therefore, the evidence at trial was sufficient to sustain Howe's conviction, and the district court did not err in denying Howe's motion for judgment of acquittal.

### D.    Mistaken Dismissal

Howe argues that the district court violated the Fifth Amendment by reinstating the count of the indictment on which he was convicted after it dismissed the entire indictment without prejudice. The Government argues that the district court may correct a clerical error under Federal Rule of Criminal Procedure 36. Rule 36 states, "After giving any notice it considers appropriate, the court may at any time correct a

clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. Our circuit has not identified what standard of review applies to a district court's decision to correct a clerical error under Rule 36. We choose to review this decision for an abuse of discretion. *See United States v. Niemiec*, 689 F.2d 688, 690 (7th Cir. 1982). *But see United States v. Dickie*, 752 F.2d 1398, 1400 (9th Cir. 1985) (applying the clearly erroneous standard).

We have permitted a district court to correct a final judgment under Rule 36 to include an omitted forfeiture order where the court had entered a preliminary forfeiture order earlier. *United States v. Hatcher*, 323 F.3d 666, 673-74 (8th Cir. 2003); *see also United States v. Ferrario-Pozzi*, 368 F.3d 5, 9 (1st Cir. 2004)*; United States v. Mitchell*, 70 Fed. Appx. 707, 714 (4th Cir. 2003) (unpublished per curiam). In *United States v. Bennett*, the Third Circuit also discussed the application of Rule 36 in a forfeiture case. 423 F.3d 271, 277-82 (3d Cir. 2005) (holding that the district court could amend a final sentence that omitted an order of forfeiture because a preliminary order of forfeiture was issued and the parties knew about the forfeiture). The Third Circuit held that

> The District Court's error can properly be regarded as clerical because (1) the parties stipulated to the forfeiture; (2) a preliminary order of forfeiture was issued; and (3) the omission of the final order of forfeiture resulted from an organizational failure, not a legal error. We have said that Federal Rule of Civil Procedure 60(a) [the civil analogue of Rule 36] . . . is limited to the correction of clerical mistakes; it encompasses only errors mechanical in nature, apparent on the record, and not involving an error of substantive judgment.

*Id.* at 281 (internal quotations omitted) (alteration in original). We have said that "[a]n authorized correction, pursuant to Rule 36, may clarify a sentence, unclear in

written form, that is clear when the record is examined as a whole." *United States v. Tramp*, 30 F.3d 1035, 1037 (8th Cir. 1994) (discussing the differences and ambiguities between an oral and written judgment).

While this case does not involve a forfeiture order or any previous oral judgment relating to a sentence, we apply the principles of these cases to this situation. After examining the record as a whole, we conclude that the district court's dismissal of the entire indictment was an oversight that was apparent on the record. The district court denied Howe's motion for judgment of acquittal in the same order that it dismissed the entire indictment. Thus, the court clearly provided Howe with notice of its intent to uphold the guilty verdict on the felon in possession count. To then dismiss it without explanation would be obviously and inherently inconsistent. In addition, if the original dismissal without prejudice were to stand, then there would be another fundamental and obvious inconsistency. The jury acquitted Howe on Counts 2 and 6. If the dismissal of these counts were to be without prejudice, the Government presumably would be allowed to retry Howe on counts for which he had been acquitted. However, the Double Jeopardy Clause prohibits a retrial on counts for which Howe was acquitted. *See* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."). These obvious inconsistencies demonstrate that the district court did not intend to dismiss the entire indictment. Therefore, the district court's original dismissal was not an error of judgment, but it qualifies as an oversight that was apparent from the record. While there certainly are limits to the reach of Rule 36, we find that the district court did not abuse its discretion, under these circumstances, by correcting its order dismissing the entire indictment.

**E.    Sentencing**

Howe challenges multiple aspects of his sentence.  We first review a sentence for procedural errors.  *Gall v. United States*, 552 U.S. ---, 128 S. Ct. 586, 597 (2007). We

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range.

*Id.*  In reviewing the sentence for procedural errors, "[w]e review a district court's interpretation and application of the guidelines de novo and its factual findings regarding enhancements for clear error." *United States v. Pate*, 518 F.3d 972, 975 (8th Cir. 2008) (quotation omitted).  We next review the substantive reasonableness of the sentence for an abuse of discretion.  *Gall*, 128 S. Ct. at 597.

The district court found that Howe had a total offense level of 47 and a criminal history category VI, resulting in an advisory sentencing guidelines sentence of  life imprisonment.  To reach this offense level, the district court first applied the cross reference in U.S.S.G. § 2K2.1(c).  According to the cross reference,

> (1)    If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply --
>
> . . .

-15-

> > (B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined [by § 2K2.1(b)(6)].

U.S.S.G. § 2K2.1(c). "'Another offense', for purposes of subsection (c)(1), means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, cmt. n.14(C). Section 2A1.1(a) is the appropriate guideline for first degree murder and provides a base offense level of 43.[5]

Howe argues that the district court erred in applying this cross reference because the Government failed to prove by a preponderance of the evidence that Howe conspired to kidnap and murder Gaither and that Howe's possession of a firearm was in connection with the conspiracy to kidnap and murder Gaither.[6] Howe was not convicted of any other offense. "When the proposed enhancement is based upon an offense for which there was no prior conviction, as in this case, the government must prove at sentencing (by a preponderance of the evidence) that the defendant committed it." *United States v. Phillips*, 506 F.3d 685, 688 (8th Cir. 2007)

---

[5]"This guideline . . . applies when death results from the commission of certain felonies. For example, this guideline may be applied as a result of a cross reference (*e.g.*, a kidnapping in which death occurs) . . . ." U.S.S.G. § 2A1.1, cmt. n.1 (emphasis altered).

[6]Howe argues that the district court found that the Government proved by a preponderance of the evidence that Howe conspired to kidnap and murder Gaither. While the district court discussed a conspiracy to kidnap and murder Gaither at one point at the sentencing hearing, it is clear from reviewing the entire transcript that the district court found that Gaither's death resulted from the offense of conspiring to kidnap and rob Gaither. Therefore, we frame our analysis as determining whether the Government proved by a preponderance of the evidence that Howe conspired to kidnap and rob Gaither and that Gaither's death resulted from that conspiracy. *See* U.S.S.G. § 2K2.1(c)(1)(B).

-16-

(internal quotation omitted). "Acquitted conduct may be used for sentencing purposes if proved by a preponderance of the evidence." *United States v. No Neck*, 472 F.3d 1048, 1055 (8th Cir. 2007).

Based on the evidence presented by the Government during the trial, we find no clear error in the district court's finding that the Government proved by a preponderance of the evidence that Howe conspired to kidnap and rob Gaither, which resulted in Gaither's death. As we have previously discussed, Smith testified that Howe planned and organized the kidnapping and robbery of Gaither. Howe instructed Smith to retrieve the firearm from his vehicle, and then Howe gave the firearm to Phillips to conduct the kidnapping and robbery of Gaither, which ultimately resulted in Gaither's death. Howe also instructed Smith and Phillips as to what actions to take. Therefore, even though Howe was acquitted of conspiring to commit robbery and kidnapping that resulted in Gaither's death, we see no clear error in the district court's holding that the Government proved by a preponderance of the evidence that Howe committed this offense.

The Government also had to prove by a preponderance of the evidence the absence of any defenses to the offense of conspiring to kidnap and rob Gaither. Howe argues that the Government did not meet this burden. Howe argues that he was elsewhere on the day of Gaither's murder. He did not elaborate on this defense in his closing argument, at sentencing, or in his present appeal. In any event, his purported alibi defense is not inconsistent with the Government's theory that Howe organized and planned the kidnapping and robbery. The Government did not allege that Howe actually kidnapped and robbed Gaither. Rather, the offense at issue is conspiring to kidnap and rob Gaither. The Government's theory did not involve Howe's presence at the scene of the actual crime against Gaither. Therefore, his alibi that he was elsewhere at the time of the actual kidnapping and robbery fails as a defense. *Cf. United States v. Raglin*, 500 F.3d 675, 678 (8th Cir. 2007). Howe's other supposed defense, that Smith's testimony is uncorroborated by other evidence, also fails because

Smith's lack of alleged credibility is not an affirmative defense. The Government presented its case, and the district court's finding that the Government proved the offense by a preponderance of the evidence includes its determination of Smith's credibility. "A district court's determination as to the credibility of a witness is virtually unreviewable on appeal." *United States v. Cantrell*, 530 F.3d 684, 692 (8th Cir. 2008) (quotation omitted). Therefore, we hold that the Government proved the absence of any defenses by a preponderance of the evidence.

We also find no error in the district court's application of the cross reference because Howe's transfer of the firearm was "in connection with" the offense of conspiring to kidnap and rob Gaither. The cross reference applies if Howe "transferred a firearm . . . with knowledge or intent that it would be used or possessed in connection with another offense." § 2K2.1(c)(1). The Government proved by a preponderance of the evidence that Howe transferred the firearm with the knowledge or intent that it would be used in connection with the conspiracy to kidnap and rob Gaither. Howe played an integral role in planning and organizing the kidnapping and robbery. When Howe gave the firearm to Phillips, he clearly transferred the firearm to Phillips with the knowledge and intent that Phillips would use it to kidnap and rob Gaither. Because a preponderance of the evidence supports the district court's conclusion that Gaither's murder resulted from this offense, the district court properly applied the cross reference in § 2K2.1(c)(1)(B).[7]

---

[7]Because the district court correctly applied the cross reference, we need not review the district court's decision to increase Howe's offense level by 4 levels pursuant to § 2K2.1(b)(6). That increase became irrelevant by the application of the cross reference. *See United States v. LeGrand*, 468 F.3d 1077, 1082 (8th Cir. 2006) (finding certain enhancements to be irrelevant after the district court's determination that the defendant was a career offender increased his base offense level to a higher level).

Howe also argues that the firearm possession was not "in connection with another felony offense" for the purposes of applying the § 2K2.1(b)(6) enhancement

Howe also argues that his due process rights were violated by the district court's calculation of his offense level because the "sentencing enhancement factor[s] become[] a tail which wags the dog of the substantive offense." *United States v. Townley*, 929 F.2d 365, 369 (8th Cir. 1991) (internal quotation omitted). The Ninth Circuit has held that when a district court's findings at sentencing create a "disproportionate impact" on the defendant's sentence the court must review the district court's findings under the more stringent clear and convincing evidence standard. *United States v. Jordan*, 256 F.3d 922, 933 (9th Cir. 2001). "Our court has often alluded to this exception, but has never found a case with facts sufficient to fall within the exception." *United States v. Bradford*, 499 F.3d 910, 920 (8th Cir. 2007), *cert. denied*, --- U.S. ---, 128 S. Ct. 2078 (2008). In this case, before the district court applied any adjustments, Howe's base offense level was 20. With a criminal history category of VI, the guidelines range would have been 70 to 87 months' imprisonment. Howe's ultimate sentence was 180 months' imprisonment, which has a corresponding offense level of 29. This increase of nine offense levels and a resulting sentence that is 93 months above the high end of the original guidelines range does not create such a disproportionate impact. *See id.* (finding that an actual sentence that represented an

---

because the other offense was not distinct from or separate in time from the firearm possession offense. To the extent that his argument also applies to the requirement of "another offense" under the § 2K2.1(c)(1)(B) cross reference, we find that it fails. While there is a circuit split on whether § 2K2.1(b)(6) applies when the "other felony offense" is not separate or distinct from the firearm possession, *see United States v. Chavarria-Cabrera*, 272 F.3d 1049, 1051 (8th Cir. 2001) (recognizing a circuit split), the "other offense" in this case involves the conspiracy to kidnap and rob Gaither, an offense that is "wholly distinct from [Howe's] weapon[] possession . . . offense." *See id.*

We also find no relevance or merit to Howe's argument that he did not "use" the firearm when Doyle traded a firearm for drugs three months before Gaither's murder. While this is a correct statement of law under the Supreme Court's holding in *Watson v. United States*, 552 U.S. ---, 128 S. Ct. 579 (2007), this exchange is irrelevant in determining the application of the cross reference.

increase of seven offense levels and that was 113 months above the top of the original guidelines range was not sufficient to require the use of the clear and convincing evidence standard). Therefore, we do not find that this is a case where we must apply this exception and review the district court's findings for clear and convincing evidence.[8]

Howe then argues that the district court failed to calculate an advisory guidelines range for the escape count. The district court, though, correctly grouped the felon in possession count and the escape count together and calculated one advisory sentencing guidelines range for the two counts. *See* U.S.S.G. § 3D1.2; *United States v. Vaca*, 289 F.3d 1046, 1049 (8th Cir. 2002).

Howe also argues that the district court could not impose the statutory maximum sentence for each of the two counts that were grouped together. Howe contends that his sentence of 180 months' imprisonment exceeded the statutory maximum for the felon in possession conviction. However, Howe's 180-month sentence included the statutory maximum 120 months for his felon in possession of a firearm conviction and the statutory maximum 60 months for his escape conviction. Contrary to Howe's argument, counts that are grouped together to determine the guidelines range are not merged together to determine the statutory maximum sentence. *See Vaca*, 289 F.3d at 1049 (affirming the district court's sentencing when it "grouped Counts I and II under U.S.S.G. § 3D1.2(c) and used the grouped counts to find the applicable guidelines range . . ., then imposed concurrent sentences on each

---

[8]We also disagree with Howe's other arguments relating to the district court's calculation of his offense level. He argues that the district court erred in adding two levels for Howe's role in the offense, *see* § 3B1.1(c), in adding two levels for obstruction of justice for Howe escaping custody while awaiting trial, *see* § 3C1.1, and in not applying an acceptance of responsibility adjustment because he pled guilty to the escape count. He does not provide specific arguments why these decisions are incorrect, and we find no clear error by the district court in applying these adjustments. *See Peters v. United States*, 464 F.3d 811, 812 (8th Cir. 2006).

count using that guidelines range, but then correctly reduced the sentence on Count II to the statutory maximum sentence"). Furthermore, a district court may "run sentences from multiple counts consecutively, rather than concurrently, if the Guideline sentence exceeds the statutory maximum sentence for each count." *United States v. Zimmer*, 299 F.3d 710, 725 (8th Cir. 2002) (quotation omitted); *see* U.S.S.G. § 5G1.2(d). Therefore, the district court committed no procedural error in sentencing Howe to 120 months' imprisonment on the felon in possession count and a consecutive 60 months' imprisonment on the escape count.[9]

Next, Howe argues that the district court erroneously applied a presumption of reasonableness to the advisory sentencing guidelines range. Near the beginning of the sentencing hearing, the district court acknowledged the Supreme Court's holding in *Rita v. United States*, 551 U.S. ---, 127 S. Ct. 2456 (2007), saying, "[T]here was a case in June of this year, the *Rita* case, by the United States Supreme Court, which held that any criminal sentence within the guideline range would be presumed to be a reasonable sentence. So you need to be aware of that." Sentencing Tr. at 11-12. Howe did not object to this statement as sentencing, so we review his argument for plain error. *See United States v. Gaddy*, --- F.3d ---, 2008 WL 2717681, at *6 (8th Cir. July 14, 2008) (citing *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc)). Under plain error review, Howe must prove an "(1) error, (2) that was plain, and (3) that affected substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if

---

[9]Howe also argues that the district court did not clearly state if it was imposing a variance or departure in reaching this sentence. However, the district court imposed the statutory maximum sentence on each count and ran them consecutively. Because the advisory guidelines range exceeded the sum of the statutory maximums, the statutorily authorized maximum sentences became the guidelines sentence. *See* U.S.S.G. § 5G1.1(a); *United States v. Andrews*, 339 F.3d 754, 757-58 (8th Cir. 2003) (stating that a defendant cannot be sentenced to more than the statutory maximum when the guidelines range exceeds the statutory maximum). Therefore, the district court did not vary or depart in reaching those sentences.

(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation and alterations omitted).

Even if we assume that the district court erroneously thought that it could presume the guidelines range was reasonable and that such an error was plain, we conclude that the error did not affect Howe's substantial rights. After this statement, the district court listened to and considered the parties' arguments about the guidelines range calculation and the 18 U.S.C. § 3553(a) factors. It then reviewed the § 3553(a) factors and based its sentence on those factors, saying:

> I have reviewed 3553(a) factors, factors to be considered in imposing a sentence, and I assume these are the circumstances of the offense, history and characteristics of the defendant, the sentence to be imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, afford adequate deterrent to criminal offense. That plus the remaining ones, I assure you I have considered and will consider in imposing a sentence on Mr. Howe.

Sentencing Tr. at 44. Moreover, there is no indication by the district court that it would have given Howe a lower sentence without such a presumption. With this record, we conclude that Howe "cannot carry his burden of showing [that there was a reasonable probability] that he would have received a lesser sentence in the absence of the district court's erroneous presumption." *See Gaddy*, 2008 WL 2717681, at *6 (quotation omitted).

Howe also argues that the district court did not adequately explain its reasons for imposing the sentence. We find this argument to be meritless because the district court stated that it considered the § 3553(a) factors and that the sentence imposed addressed those factors. "When explaining the § 3553(a) factors, the district court is not required to provide a full opinion in every case." *United States v. Guarino*, 517 F.3d 1067, 1068-69 (8th Cir. 2008), *petition for cert. filed*, --- U.S.L.W. --- (U.S. July

9, 2008) (08-5241). "It must set forth enough reasons to satisfy the appellate court that it has considered the parties' arguments and has an articulate basis for exercising its own discretionary authority." *Id.* at 1069. In deciding whether the district court adequately explained its reasons for Howe's sentence, we "examine[] the entire sentencing record, not just the district court's statements at the hearing." *Id.* Based on the entire sentencing record, we find that the district court provided an adequate explanation for Howe's sentence. Therefore, the district court did not commit procedural error in sentencing Howe, and we affirm Howe's sentence.

## III.   CONCLUSION

For the foregoing reasons, we affirm Howe's conviction and sentence.

_____