# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3320

———————

United States of America,

           Plaintiff - Appellee,

v.

Doyle C. Alcorn,

           Defendant - Appellant.

Appeal from the United States
District Court for the
Eastern District of Missouri.

———————

Submitted: April 11, 2011
Filed: May 13, 2011

———————

Before LOKEN, BALDOCK,[1] and MURPHY, Circuit Judges.

———————

MURPHY, Circuit Judge.

    Doyle C. Alcorn was charged with being a felon in possession of a firearm and manufacturing marijuana. A jury found him guilty of both crimes, and the district court[2] sentenced Alcorn to two concurrent twenty month sentences. Alcorn appeals, arguing that the district court erred by giving the jury only a general unanimity

———

[1]The Honorable Bobby R. Baldock, Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.

[2]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

instruction, by refusing his request for an instruction on entrapment or estoppel, and by denying his motion for a judgment of acquittal.[3] We affirm.

## I.

Police first visited Alcorn's home on August 11, 2009 after marijuana plants growing on his property caught the eye of a spotter in a Missouri state police helicopter. Officers in the helicopter directed their colleagues on the ground to Alcorn's property. Officers Shawn Dougherty and Eric Hackman knocked on Alcorn's door and were met there by Alcorn's daughter, who told the officers that the plants belonged to her father. Alcorn returned home shortly thereafter and gave the officers permission to search his property. After being advised of his <u>Miranda</u> rights, Alcorn showed the officers marijuana plants growing on the property as well as processed marijuana which the officers seized. Alcorn admitted to growing marijuana and also stated that he had been convicted previously for possession of a pound of marijuana. The officers were called away from Alcorn's house by a report that someone was attempting to burn a marijuana patch at a different location.

Dougherty returned to Alcorn's home a few days later and took his fingerprints. Dougherty asked Alcorn if he had firearms in the house, and Alcorn confirmed that he did. Alcorn showed Dougherty a locked gun safe and told Dougherty that he not have the key to the safe but that there were two guns inside. According to Dougherty, Alcorn then led the officer to his bedroom closet and told him that there was a shotgun inside. Alcorn denies having told Dougherty that there was a shotgun in the closet, claiming that he became aware of its presence when Dougherty found it there. Dougherty examined the shotgun but did not seize it on that visit. Instead he left the gun in the home and departed.

---

[3]In a pro se letter sent to the court after oral argument, Alcorn has raised new concerns about his counsel, his son in law, and the police officers in this case. To the extent relevant he may wish to pursue them in a petition under 28 U.S.C. § 2255.

Dougherty reported the firearms in Alcorn's home to ATF Special Agent John Taylor. Accompanied by Taylor, Dougherty returned to Alcorn's home for a third time on August 20, 2009. Alcorn had meanwhile obtained the key to the gun safe, and he showed the officers the two guns inside it. Taylor then informed Alcorn of his Miranda rights. The officers proceeded to Alcorn's bedroom closet, where they found the shotgun and again examined it. According to the officers, Alcorn told them that he had paid $150 to buy the gun from his son in law. According to Alcorn, his son in law was the owner of the gun and had offered to sell it to him, but Alcorn did not want to purchase it because he knew that he could not legally possess it as a convicted felon. The officers seized the shotgun.

Alcorn was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and with manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). He was tried before a jury which found him guilty of both crimes. The district court sentenced him to two concurrent twenty month sentences. Alcorn now argues that the district court denied him his right to a unanimous verdict by failing to instruct the jury adequately and erred by denying his request for an entrapment by estoppel instruction and his motion for a judgment of acquittal.

II.

Alcorn contends that the district court's general unanimity instruction was not sufficient to ensure that the jury agreed on the factual basis of his gun possession conviction. He contends that special unanimity instruction was required, though he admits that he did not request one at trial.

Alcorn argues that we should review this issue de novo in spite of his failure to raise this issue below, citing Black v. United States, 130 S.Ct. 2963, 2966 (2010). Black is different from this case, however, because the government conceded there that the defendants had "preserved their instructional challenge," and the Court

concluded that the defendants had "properly object[ed]" at trial. Id. at 2969 n.12 & 2970. Because Alcorn failed to request a special jury instruction or otherwise raise the issue below, we review the court's unanimity instruction for plain error. See United States v. Vanover, 630 F.3d 1108, 1119 (8th Cir. 2011); United States v. Kempis-Bonola, 287 F.3d 699, 701 (8th Cir. 2002).

The indictment charged Alcorn with possessing a firearm "on or about August 20, 2009." The court instructed the jury that it was "not necessary for the government to prove that the offense was committed precisely on the date charged" and that a guilty verdict must be unanimous. Alcorn notes that in its closing argument the government asserted that Alcorn was in possession of the shotgun on the day of the officers' second visit (sometime after August 11 but before August 20) and also on their third visit on August 20. Alcorn contends that some jurors might have thought that he knowingly possessed the shotgun at the time of Dougherty's second visit to his home, while others might have thought that he was only in knowing possession of the gun after that visit. Alcorn argues that the jury should have been instructed that it must find unanimously that he possessed the gun on a particular date.

We rejected a similar argument in United States v. Brody, 486 F.2d 291, 292 (8th Cir. 1973). There, the defendants were charged with possessing an unregistered shotgun in violation of 26 U.S.C. § 5861. The indictment in Brody, as here, charged the defendants with possessing the shotgun "on or about" a certain day. During its deliberations the jury asked the trial court whether the indictment covered only the date of arrest or "any previous time covered by the evidence at trial." The court responded to the jury that "[t]he proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged." Id. We found those instructions to be proper and that an "on or about charge" effectively "encompasses possession on days other than that specified." Id.

We have not found unanimity concerns with such instructions, even where the government has presented theories of possession on different dates. In United States v. Howe, for example, the defendant was charged with being a felon in possession of a handgun on or about December 6, 2002, but the government also argued that the defendant was in possession of a gun three months before that date. 538 F.3d 842, 850 (8th Cir. 2008), abrogated on other grounds by United States v. Villareal-Amarillas, 562 F.3d 892, 896 (8th Cir. 2009).

Noting that the date of possession is "not a material element of the felon in possession of a firearm charge," we rejected the notion that evidence and arguments about a date other than that listed in the indictment "contributed to the existence of a variance or a constructive amendment" of the indictment. Howe, 538 F.3d at 851 n.4. For the same reasons, we conclude that the district court committed no plain error in its decision to give the jury only a general unanimity instruction.

### III.

Alcorn contends that the district court erred by refusing to grant his motion for acquittal on the basis of entrapment or, in the alternative, by rejecting his request for a jury instruction on that defense. We review de novo the district court's denial of instructions for an entrapment defense. United States v. Young, 613 F.3d 735, 743 (8th Cir. 2010). We also review de novo the district court's denial of a motion of acquittal on the basis of entrapment, viewing the evidence in the light most favorable to the government. United States v. Crump, 934 F.2d 947, 956 (8th Cir. 1991).

Entrapment by estoppel applies "when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct." United States v. Benning, 248 F.3d 772, 775 (8th Cir. 2001). The "government official must be guilty of affirmative misconduct in order for a defendant to put forth a viable defense of entrapment by estoppel." Id. A

defendant is entitled to an entrapment instruction when "there exists evidence sufficient for a reasonable jury to find in his favor," even when the defendant also denies an element of the offense in question. Mathews v. United States, 485 U.S. 58, 63 (1988).

Alcorn contends that he was entitled to an entrapment instruction because Dougherty's "nonverbal act of leaving the firearm in [Alcorn's] closet" upon discovering it on his second visit "was a powerful 'inducement' by an agent of the government to commit the illegal act." The government responds that Alcorn has not shown "any statement by Dougherty that could be fairly interpreted as a representation that Alcorn could possess a firearm." We agree that the record gives no indication that Dougherty was guilty of any "affirmative misconduct" or that he ever assured Alcorn that his possession of the gun was legal. See Benning, 248 F.3d at 775. Dougherty never told Alcorn that his possession of a gun was anything but illegal.

Alcorn's reliance on Raley v. Ohio, 360 U.S. 423, 437-38 (1959), is misplaced. There, the defendants had been witnesses called before the Ohio UnAmerican Activities Commission. The state erroneously informed the defendants that they could invoke their Fifth Amendment privilege against self incrimination, but they were subsequently prosecuted for their mistaken exercise of that privilege. The Court concluded that the defendants were entitled to an entrapment defense because they were victims of "active misleading" by the government. Id. at 438. Here the record reflects that Dougherty made no statements or actions which could be construed as actively misleading Alcorn into believing that his possession of the shotgun was lawful.

Since Alcorn did not show the required elements of an entrapment defense, the district court committed no error by refusing to grant his motion for a judgment of acquittal on the basis of entrapment or his request for jury instructions on that defense.

## IV.

After a careful review of the record, we affirm the judgment of the district court.

_____